**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| JINDAL POLY FILMS LIMITED, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES, | ) | Court No. 24-00053 |
| Defendant, | ) | |
| and | ) | |
| DUPONT TEIJIN FILMS, MITSUBISHI CHEMICAL AMERICA, INC. – POLYESTER FILM DIVISION, AND SK MICROWORKS AMERICA, INC., | ) | |
| Defendant-Intervenors. | ) | |

_____

## <u>ORDER</u>

Upon consideration of the motion for judgment upon the administrative record filed by plaintiff, responses thereto, plaintiffs' reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED;

ORDERED that the Department of Commerce's determination is affirmed in all respects; and it is further

ORDERED that judgment is entered in favor of the United States.

_____
CHIEF JUDGE

Dated: _____

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

---

| | |
|---|---|
| JINDAL POLY FILMS LIMITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | Court No. 24-00053 |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| DUPONT TEIJIN FILMS, ) | |
| MITSUBISHI CHEMICAL AMERICA, ) | |
| INC. – POLYESTER FILM ) | |
| DIVISION, AND SK MICROWORKS ) | |
| AMERICA, INC., ) | |
| ) | |
| Defendant-Intervenors. ) | |

---

**DEFENDANT'S RESPONSE TO PLANITIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, Jr.
Assistant Director

HENDRICKS VALENZUELA
Of Counsel

U.S. Department of Commerce
Office of the Chief Counsel for
Trade Enforcement & Compliance
1401 Constitution Ave., NW
Washington, D.C. 20230

BRITTNEY M. WELCH
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-3753
Email: brittney.welch@usdoj.gov

December 5, 2024

Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGE**

STATEMENT PURSUANT TO RULE 56.2................................................................... 2

    I.    Administrative Determination Under Review...................................... 2

    II.    Statement Of The Issues

STATEMENT OF FACTS....................................................................................... 2

SUMMARY OF ARGUMENT ............................................................................... 6

ARGUMENT .......................................................................................................... 7

    I.    Standard Of Review ......................................................................... 7

    II.    Commerce Reasonably Rejected Jindal's Untimely Request For An Extension Of Time, As The Context Of Jindal's Request Does Not Show The Existence Of Extraordinary Circumstances ............................................................... 8

    III.    Application Of AFA To Jindal Was Supported By Substantial Evidence ...........15

    IV.    Commerce's Selection Of The AFA Rate Was In Accordance With Law ...........19

CONCLUSION.........................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

<u>**CASES**</u>                                                                                    <u>**PAGE(S)**</u>

*AgustaWestland North America, Inc. v. United States*,
    880 F.3d 1326 (Fed. Cir. 2018) ............................................................13

*Camp v. Pitts*,
    411 U.S. 138 (1973) ............................................................................13

*Consol. Edison Co. v. N.L.R.B.*,
    305 U.S. 197 (1938) ..............................................................................7

*Consol. Fibers, Inc. v. United States*,
    535 F. Supp. 2d 1345 (Ct. Int'l Trade 2008) ........................................8

*Consolo v. Federal Maritime Comm'n*,
    383 U.S. 607 (1966) ..............................................................................8

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007) ............................................................15

*Celik Halat ve Tel Sanayi A.S. v. United States*,
    557 F. Supp. 3d 1363 (Ct. Int'l Trade 2022) .................................. 12, 13

*Dongtai Peak Honey Indus. Co. v. United States*,
    971 F. Supp. 2d 1234 (Ct. Int'l Trade 2014),*aff'd*,
    777 F.3d 1343 (Fed. Cir. 2015) ................................................ 8, 12, 15

*Elkem Metals Co. v. United States*,
    27 CIT 838 (2003)................................................................................20

*Fujitsu Gen. Ltd. v. United States*,
    88 F.3d 1034 (Fed. Cir. 1996) ..............................................................7

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
    36 C.I.T. 98 (2012)...............................................................................15

*Grupo Acerero S.A. de C.V. v. United States*,
    698 F. Supp. 3d 1320 (Ct. Int'l Trade 2024)................................... 11, 12

*Hung Vuong Corp. v. United States*,
    483 F. Supp. 3d 1321 (Ct. Int'l Trade 2020).................................. 16, 17

*Maverick Tube Corp. v. United States*,
    107 F. Supp. 3d 1318 (Ct. Int'l Trade 2015)...................................7, 14

*Micron Tech., Inc. v. United States*,
    117 F.3d 1386 (Fed. Cir. 1997) ........................................................................7

*Nippon Steel Corp. v. United States*,
    337 F.3d 1373 (Fed. Cir. 2003) ...............................................................17, 20

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) ........................................................................7

*Oman Fasteners, LLC v. United States*,
    No. 22-00348, 2023 WL 2233642 (Ct. Int'l Trade Feb. 15, 2023) ...........................11

*PAM, S.p.A. v. United States*,
    582 F.3d 1336 (Fed. Cir. 2009) ........................................................................7

*Papierfabrik Aug. Koehler SE v. United States*,
    843 F.3d 1373 (Fed. Cir. 2016) ......................................................................19

*PSC VSMPO-Avisma Corp. v. U.S.*,
    688 F.3d 751 (Fed. Cir. 2012) ..........................................................................9

*Sandvik Steel Co. v. United States*,
    164 F.3d 596 (Fed. Cir. 1998) ........................................................................13

*Shandong Huarong Mach. Co. v. United States*,
    30 C.I.T. 1269 (2006) ....................................................................................20

*SKF USA, Inc. v. United States*,
    263 F.3d 1369 (Fed. Cir. 2001) ........................................................................8

*Stanley Works (Langfang) Fastening Sys. Co., Ltd. v. United States*,
    279 F. Supp. 3d 1172 (Ct. Int'l Trade 2017) .....................................................13

*Tel Sanayi A.S. v. United States*,
    557 F. Supp. 3d 1363 (Ct. Int'l Trade 2022) .....................................................12

*Transactive Corp. v. United States*,
    91 F.3d 232 (D.C. Cir. 1996) ...........................................................................8

*Trinity Mfg., Inc. v. United States*,
    549 F. Supp. 3d 1370 (Ct. Int'l Trade 2021) *aff'd*,
    No. 2022-1329, 2023 WL 234228 (Fed. Cir. Jan. 18, 2023) .................................15

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*,
    435 U.S. 519 (1978) ......................................................................................9

*Zoltek Corp. v. United States*,
　728 F. Supp. 762 (Ct. Int'l Trade 1989) .................................................................20

## STATUTES

19 U.S.C. § 1516a(b)(1)(B) .................................................................................7

19 U.S.C. § 1677e .....................................................................................*passim*

28 U.S.C. § 2637(d) .........................................................................................15

## REGULATIONS

19 C.F.R. § 351.302 ...................................................................................*passim*

19 C.F.R. § 351.309(c)(2) ..................................................................................15

## ADMINISTRATIVE DETERMINATIONS

*Polyethylene Terephthalate Film, Sheet, and Strip from India*,
　89 Fed. Reg. 5,490 (Dep't of Commerce January 29, 2024) ...................................2, 6

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Preliminary Results of
Countervailing Duty Administrative Review and Partial Rescission of
Administrative Review; 2021*,
　88 Fed. Reg. 50,834 (Dep't of Commerce Aug. 2, 2023) ......................................3, 5

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*,
　87 Fed. Reg. 54,463 (Dep't of Commerce Sept. 6, 2022) .............................3, 14, 18

*Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation;
Opportunity to Request Administrative Review and Join Annual Inquiry Service List*,
　87 Fed. Reg. 39,461 (Dep't of Commerce July 1, 2022) ......................................2, 3

*Countervailing Duty Order; Polyethylene Terephthalate Film Sheet, and Strip
(PET Film) from India*,
　67 Fed. Reg. 44,179 (Dep't of Commerce July 1, 2002) ..........................................2

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

_____
|                                              )
JINDAL POLY FILMS LIMITED,       )
|                                              )
        Plaintiff,       )
|                                              )
  v.                                   )
|                                              )
UNITED STATES,                        )
|                                              )    Court No. 24-00053
        Defendant,       )
|                                              )
  and                                )
|                                              )
DUPONT TEIJIN FILMS,             )
MITSUBISHI CHEMICAL AMERICA,  )
INC. – POLYESTER FILM            )
DIVISION, AND SK MICROWORKS      )
AMERICA, INC.,                       )
|                                              )
        Defendant-Intervenors.  )
_____)

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

      Defendant, the United States, respectfully submits this response in opposition to the Rule

56.2 motion for judgment on the agency record filed by plaintiff, Jindal Poly Films Limited

(Jindal) (Jindal Br., ECF No. 25), which challenges certain aspects of the final results of the

Department of Commerce's 2021 administrative review of the countervailing duty order

covering polyethylene terephthalate film, sheet, and strip (PET film) from India.  For the reasons

explained below, the Court should sustain the final results as supported by substantial evidence

and otherwise in accordance with law.

1

## STATEMENT PURSUANT TO RULE 56.2

I.    <u>Administrative Determination Under Review</u>

The administrative determination under review is the final results of the countervailing duty review covering PET film from India.  *See Polyethylene Terephthalate Film, Sheet, and Strip from India*, 89 Fed. Reg. 5,490 (Dep't of Commerce January 29, 2024) (*Final Results*) (P.R. 109),[1] and accompanying Issues and Decision Memorandum (IDM) (Dep't of Commerce January 23, 2024) (P.R. 108).  The period of review was January 1, 2021, through December 31, 2021.

II.    <u>Statement Of The Issues</u>

1.    Whether Commerce acted within its discretion and consistent with its regulations when it rejected Jindal's untimely request for extension of time.

2.    Whether Commerce's application of total adverse facts available (AFA) to Jindal is supported by substantial evidence and otherwise lawful.

3.    Whether Commerce's selection of the AFA rate is supported by substantial evidence and otherwise lawful.

## STATEMENT OF FACTS

On July 1, 2002, Commerce published the countervailing duty order covering PET film from India.  *See Countervailing Duty Order; Polyethylene Terephthalate Film Sheet, and Strip (PET Film) from India*, 67 Fed. Reg. 44,179 (Dep't of Commerce July 1, 2002).  On July 1, 2022, Commerce published a notice of opportunity to request an administrative review.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. (Dep't of

---

[1]  Citations to the public record (P.R.) refer to the record of the countervailing duty review.

Commerce July 1, 2022) (P.R. 1).  Pursuant to timely requests, Commerce initiated an administrative review for those producers for whom interested parties requested individual review, including Jindal.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 54,463, 54,473 (Dep't of Commerce Sept. 6, 2022) (P.R. 9) (Initiation Notice).

On October 27, 2022, Commerce selected SRF Limited of India (SRF) as the sole mandatory respondent.  *See Polyethylene Terephthalate Film, Sheet, and Strip From India: Preliminary Results of Countervailing Duty Administrative Review and Partial Rescission of Administrative Review; 2021*, 88 Fed. Reg. 50,834 (Dep't of Commerce Aug. 2, 2023) (Preliminary Results) (P.R. 90); Preliminary Decision Memorandum (PDM) at 2 (Dep't of Commerce July 27, 2023) (P.R. 89).  On November 3, 2022, Commerce issued the initial questionnaire to the Government of India (GOI).  Initial Countervailing Duty Questionnaire (P.R. 14 & 15).  Between December 2 and 5, 2022, interested parties timely withdrew their requests for review regarding all companies with the exception of Jindal.  PDM at 2; Withdrawals of Requests (P.R. 20, 24, 25).  On December 9, 2022, Commerce selected Jindal as the sole mandatory respondent and expressed its intent to rescind the review for all other companies.  PDM at 2.; Intent to Rescind Review (P.R. 27).

On December 12, 2022, Commerce re-issued the initial questionnaire to the GOI which instructed the GOI that it was "responsible for forwarding copies of this cover letter and questionnaire to the respondent company."  PDM at 2.; Countervailing Duty Questionnaire (Initial Questionnaire) (P.R. 28, 29) (emphasis omitted).

The first page of the initial questionnaire stated that the "**DUE DATE for RESPONSE to SECTION III IDENTIFYING AFFILIATED COMPANIES**" was "**December 26, 2022**."

Initial Questionnaire (P.R. 29) (emphasis in original).  Jindal failed to provide a timely response to the affiliated companies portion of the initial questionnaire by the established deadline.  PDM at 2; Jindal's Letter, "Extension request to submit Response to Section III Identifying Affiliated Companies" (Jindal Request for Extension) (P.R. 33).  On Saturday, December 31, 2022, Jindal filed an untimely request for an extension of time to file its response to the affiliated companies portion of the initial questionnaire.  Jindal Request for Extension; IDM at 5.  Before Commerce could make a determination on Jindal's request, on January 7, 2023, Jindal filed its untimely response to section III of the initial questionnaire regarding its affiliated companies.  IDM at 7; Rejection of Jindal Request for Extension (P.R. 35).

On January 11, 2023, Jindal requested an extension of time to file the remainder of its section III initial questionnaire response which was due on January 18, 2023.  Second Jindal Request for Extension (P.R. 37).  Additionally, on January 16, 2023, the GOI timely requested an extension of time to file its response to the initial questionnaire which was also due on January 18, 2023.  GOI Request for Extension (P.R. 38).  Commerce subsequently suspended all January 18 deadlines while considering Jindal's December 31, 2022 untimely request for an extension to file the affiliated companies portion of the initial questionnaire.  Suspension of Deadlines (P.R. 39).  On January 27, 2023, Commerce denied Jindal's untimely request for an extension to file the affiliated companies response to the initial questionnaire.  Commerce Letter, "Denial of Extension to File Section III of the Initial Questionnaire Identifying Affiliated Companies" (P.R. 42) (Denial of Extension Request).  Subsequently, on February 15, 2023, Commerce rejected and removed Jindal's untimely response to the affiliated companies portion

of the initial questionnaire from the record of the proceeding pursuant to 19 C.F.R. § 351.302(d). Rejection of Jindal Questionnaire (P.R. 46).

On March 28, 2023, Commerce reinstated the deadline for the GOI to respond to its portions of the initial questionnaire.  Reinstatement of Deadline for GOI (P.R. 74). Subsequently, the GOI timely filed its initial questionnaire responses, and Commerce issued a supplemental questionnaire requesting further information from the GOI.  GOI Questionnaire Responses (P.R. 75-77); Supplemental Questionnaire (P.R. 81).  On June 26, 2023, the GOI timely responded to Commerce's supplemental questionnaire.  GOI Supplemental Questionnaire Response (P.R. 86).

Commerce issued its preliminary results on July 27, 2023.  Commerce applied AFA to Jindal for failing to respond to the affiliated companies portion of the initial questionnaire by the established deadline and selected an AFA rate of 116.96 percent.  *See* PDM at 5-10; *see also* Preliminary Results, 88 Fed. Reg. at 50,835.  Specifically, Commerce preliminarily determined that by failing to timely respond, Jindal significantly impeded the proceedings, warranting the application of facts available pursuant to 19 U.S.C. § 1677e(a)(2)(B)-(C).  PDM at 6.  Commerce also preliminarily determined that Jindal "did not do the maximum it {was} able to do, and therefore, did not cooperate to the best of its ability" warranting adverse inferences pursuant to 19 U.S.C. § 1677e(b)(1)(A).  *Id.* (citation omitted).  The AFA rate of 116.96 percent was the total of the highest calculated non-*de minimis* rates from the same programs from any segment of this proceeding, "pursuant to Commerce's CVD AFA hierarchy for administrative reviews[.]" *Id.* at 7-9.

Commerce received timely-filed case briefs from Jindal and the GOI between August 28 and September 5, 2023, and received a timely-filed rebuttal brief from Dupont Teijin Films,

Mitsubishi Chemical America, Inc. – Polyester Film Division, and SKC, Inc. (collectively, petitioners) on September 15, 2023. IDM at 2. All parties submitted arguments regarding Commerce's application of AFA to Jindal. *Id.* at 4. In its case brief, Jindal argued that Commerce abused its discretion in denying Jindal's extension request and determining that Jindal did not act to the best of its ability when it failed to timely respond to the affiliated companies portion of the initial questionnaire, and that and that Commerce further abused its discretion in utilizing the AFA rate. *See generally* Jindal Case Brief (August 28, 2023) (P.R. 92). Commerce made no changes to its AFA determination from the preliminary results to the final results. IDM at 4. Thus, Commerce continued to assign an AFA final subsidy rate for Jindal of 116.96 percent. *See* Final Results, 89 Fed. Reg. at 5,491.

## SUMMARY OF ARGUMENT

Commerce's denial of Jindal's untimely extension request was not an abuse of discretion. Commerce's initial questionnaire clearly stated, and Jindal acknowledged, that the due date for the response to Section III, identifying affiliated companies, was December 26, 2022. Commerce considered the circumstances proffered by Jindal in its untimely request, including the facts that Jindal took no steps to seek clarification of the deadlines, and failed to monitor the questionnaire deadline itself or appoint a representative with authority to do so on its behalf until after the response was due. Jindal's behavior, in light of its status as an experienced mandatory respondent, demonstrated inattentiveness rather than extraordinary circumstances, and Commerce's determination that Jindal did not meet the standard as defined in 19 C.F.R. § 351.302(c)(2) was correct.

Commerce's determination to apply AFA to Jindal was reasonable, supported by substantial evidence, and in accordance with law. The Section III questionnaire response

identifying affiliated companies was necessary information not available on the record, and Jindal did not timely file an extension to provide the response, or timely file the response itself. Moreover, Commerce's selection of the AFA rate was reasonable and followed the statutory requirements. Accordingly, the Final Results should be sustained.

## **ARGUMENT**

### I.    Standard Of Review

In reviewing Commerce's countervailing duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" *Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)).  A party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citation omitted).  That is because "{s}ubstantial evidence" is defined as "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009) (citing *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938))).  The Court "must affirm {the agency's} determination if it is reasonable and supported by the record as a whole, even if some evidence detracts from {the agency's} conclusion." *Nippon Steel*, 458 F.3d at 1352 (citation omitted).  "{E}ven if it is possible to draw two inconsistent conclusions from evidence" contained in the record, this does not mean that Commerce's findings are not

supported by substantial evidence.  *Id*. (citation omitted); *see Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

Additionally, this Court reviews Commerce's conduct of its administrative proceedings under the abuse of discretion standard.  *See Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318, 1331 (Ct. Int'l Trade 2015) (*Maverick*);  *see also Dongtai Peak Honey Indus. Co. v. United States*, 971 F. Supp. 2d 1234, 1239 (Ct. Int'l Trade 2014), *aff'd*, 777 F.3d 1343 (Fed. Cir. 2015) (*Dongtai Peak*).  This Court (1) "must consider whether {Commerce's} decision was based on a consideration of relevant factors and whether there has been a clear error of judgment," and (2) analyze "whether a rational connection exists between {Commerce's} factfindings and its ultimate action."  *Consol. Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345, 1354 (Ct. Int'l Trade 2008).  "{A}n Agency action is arbitrary when the agency offer{s} insufficient reasons for treating similar situations differently."  *SKF USA, Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (quoting *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996)).

II.    **Commerce Reasonably Rejected Jindal's Untimely Request For An Extension Of Time, As The Context Of Jindal's Request Does Not Show The Existence Of Extraordinary Circumstances**

Commerce acted within its discretion in denying Jindal's untimely request for an extension of time to file the affiliated companies portion of the initial questionnaire.  Jindal argues that Commerce abused its discretion in making its decision because it failed to consider the context of Jindal's request.  Jindal Br. at 19-26.  Specifically, Jindal (1) quibbles about the exact number of days that Jindal waited before filing an untimely extension request, (2) argues that Commerce misunderstood Jindal's argument regarding extraordinary circumstances, (3) raises new arguments comparing this case to other cases which were not part of this record

and thus not considered by Commerce, (4) argues that Commerce ignored Jindal's unrepresented status, and, (5) argues that Commerce ignored the amount of time left in the review.  Jindal Br. at 20-22.  Jindal's assertions are not supported by the facts or the law, and this Court should sustain Commerce's final results.

Commerce is "free to fashion {its} own rules of procedure and to pursue methods of inquiry" which permit it "to discharge {its} multitudinous duties."  *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543 (1978) (citation omitted).  "Accordingly, absent {constitutional} constraints or {extremely} compelling circumstances, courts will defer to the judgment of an agency regarding the development of the agency record."  *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012).  Importantly, Commerce's regulations establish the procedures for requesting extensions of time limits and the rejection of untimely submissions.  *See* 19 C.F.R. § 351.302.  This regulation explicitly states that "An untimely filed extension request will not be considered unless the party demonstrates that an extraordinary circumstance exists."  *Id. at* § 351.302(c).  Additionally, the regulation defines an "extraordinary circumstance" as "an unexpected event that: (i) {c}ould not have been prevented if reasonable measures had been taken, and (ii) {p}recludes a party or its representative from timely filing an extension request through all reasonable means."  *Id.* at § 351.302(c)(2)(i)-(ii).  A respondent's strict adherence to statutory and regulatory deadlines, *see* 19 U.S.C. § 1675, is necessary, as it enables Commerce's compliance.  PDM at 5-6; IDM at 6.  Jindal states that this responsibility is a "throw-away line."  Jindal Br. at 24.  Statutory and regulatory deadlines are not "throw-away" responsibilities –

every missed deadline impacts Commerce's ability to comply with its statutory responsibility in each review.

Commerce's initial questionnaire stated, in bold, that the due date for the response to Section III identifying affiliated companies was December 26, 2022. Initial Questionnaire (P.R. 29). However, because this deadline fell on a Federal holiday, pursuant to Commerce's practice, the appropriate deadline was the next business day, December 27, 2022. *See* Denial of Extension Request at 1 n.1. Despite the stated deadline for the affiliated companies' portion of the initial questionnaire, Jindal waited until Saturday, December 31, 2022, to file its request for an extension of time. *See* Jindal Request for Extension. Because Jindal's submission was provided over a weekend, Commerce would only consider the submission on the next business day – thus, the extension request was effectively filed for consideration on Tuesday, January 3, 2023. *See* Denial of Extension Request at 1 n.2. Thus, Jindal's request for an extension to its affiliated companies' response was not four days late, as Jindal argues, but a week late. Jindal Br. at 20. Nonetheless, Jindal's argument disregards that its request was filed late – *regardless* of whether it was four days late or a week late – and, as such, any extension of time was governed by the standard set forth in 19 C.F.R. § 351.302(c)(2).

Contrary to Jindal's claims, Commerce considered the circumstances proffered by Jindal in its untimely request for extension of time and appropriately exercised its discretion in determining that Jindal did not meet the extraordinary circumstances standard as defined in 19 C.F.R. § 351.302(c)(2). Again, Jindal fails to explain what "extraordinary circumstances" warranted an untimely extension of time under 19 C.F.R. § 351.302(c)(2). While Jindal alleges that there were "ambiguities in the questionnaire" that it found "confusing," Jindal Br. at 19-21, Jindal itself acknowledged at the time of its extension request that "the affiliated companies'

response was due on December 26, 2022." *See* Jindal Request for Extension at 1. The late filing was attributed to an "inadvertent{} misconstru{ction}" on the part of inexperienced personnel, *not* based on an alleged ambiguity in the questionnaire itself. *Id.* (emphasis omitted). As Jindal recognized, the initial questionnaire indicated that responses to the affiliated companies portion was due on December 26, 2022. *Id.*; IDM at 7. Moreover, Jindal took no steps to seek clarification of the deadlines. *Id.* Any misconstruction by Jindal about the appropriate deadline resulted from its own inattentiveness, not because of alleged ambiguities in the questionnaire.[2]

Commerce considered the fact that one of Jindal's employees was on medical leave, Jindal Br. at 20, which resulted in the aforementioned "communication gap" regarding the appropriate deadline. Denial of Extension Request at 2; Jindal Request for Extension at 1. As Commerce explained, Jindal did not describe an inability to access the relevant documents. Denial of Extension Request at 2. Nor did Jindal claim that a medical emergency prevented a timely request for an extension on the day of, or in the days leading up to, the deadline. Jindal Request for Extension at 1; *see* Denial of Extension Request at 2. Jindal relies on distinguishable caselaw for the proposition that Commerce abused its discretion by rejecting Jindal's argument that an employee on medical leave constitutes "extraordinary circumstances." *See* Jindal Br. at 21 (citing *Grupo Acerero S.A. de C.V. v. United States*, 698 F. Supp. 3d 1320, 1332 (Ct. Int'l

---

[2] Jindal cites *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642 at *2, *6-8 (Ct. Int'l Trade Feb. 15, 2023) (*Oman Fasteners*), to support its proposition that "Commerce's contributing lack of clarity" is a factor that Commerce should have considered. Jindal Br. at 21. But, unlike the situation in *Oman Fasteners*, Jindal was entirely responsible for the misconstruction of the deadline – it was not partially the result of an issue with one of Commerce's systems. *Oman Fasteners*, 2023 WL 2233682 at *8.

Trade 2024) (*Grupo Acerero*) and *Celik Halat ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363 (Ct. Int'l Trade 2022) (*Celik Halat*)).

In *Grupo Acerero*, the case was remanded because Commerce rejected *timely* extension requests, which are evaluated under the distinct "good cause" standard, 19 C.F.R. § 351.302(b), when one mandatory respondent suffered from three dead employees, a fourth hospitalized, and outside counsel unable to help because of the COVID pandemic restrictions.  698 F. Supp. 3d at 1336.  The Court held that this situation was "the very definition of 'novel.'"  698 F. Supp. 3d at 1336.  Unlike in *Grupo Acerero*, Jindal's request for an extension was *untimely* by a week. Denial of Extension Request at 1 n.2.  The circumstances affecting *Grupo Acerero*'s respondent are objectively more severe than the facts in this case, yet that respondent *still* managed to file timely extension requests.  *See* 698 F. Supp. 3d at 1332-36; *see also Dongtai Peak*, 777 F.3d 1343, 1350-53 (Fed. Cir. 2015) (affirming that Commerce properly exercised its discretion in rejecting a respondent's two-day untimely filed extension requests.)  Similarly, the Court in *Celik Halat* remanded the case back to Commerce after Commerce rejected an entire questionnaire response because of an 87-minute late "one-day lag rule" filing even though the respondent had timely filed the entire business proprietary response the day before, thus providing Commerce with the necessary information responsive to the questionnaire.  557 F. Supp. 3d at 1371-74.  Jindal's untimely request was not late by minutes, but by 7 days.  Denial of Extension Request at 1 n.2.

Citing other proceedings, Jindal argues that Commerce has granted extension requests in medical emergencies in the past.  *See* Jindal Br. at 21-22 (citing over a dozen documents which are not part of this administrative record).  Not only are these cases distinguishable through Jindal's own description (*see, e.g.*, Jindal Br. at 21, citing administrative documents where

Commerce granted "*timely*" extension requests) (emphasis added), but this Court should disregard all such arguments because they rely on documents that are not part of this record and were not properly raised before the agency.[3]  *See Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *AgustaWestland North America, Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) ("The purpose of limiting judicial review to the record actually before the agency is to guard against courts using new evidence to convert the arbitrary and capricious standard into effectively de novo review.") (internal quotation marks and citation omitted).  By failing to raise these fact and document specific arguments before the agency, Jindal prevented Commerce from distinguishing the circumstances in this case from those in the cited documents.  *See also Stanley Works (Langfang) Fastening Sys. Co., Ltd. v. United States*, 279 F. Supp. 3d 1172, 1189 (Ct. Int'l Trade 2017) (quoting *Sandvik Steel Co. v. United States*, 164 F.3d 596, 600 (Fed. Cir. 1998)) ("Exhaustion serves two main purposes: 'to allow an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors,' and to 'promot{e} judicial efficiency by enabling an agency to correct its own errors so as to moot judicial controversies.'").

Next, Jindal argues that Commerce incorrectly focused on YKG and Associates' (YKG) representation of Jindal in the review, ignoring Jindal's unrepresented status when Commerce

---

[3]  Jindal cites documents from one proceeding in which the extension of time was untimely but still granted, Jindal Br. at 22, documents which are not a part of this record. Further, as discussed in relation to *Celik Halat* above, Jindal's delay was not only several hours or one day late – it was an entire week late, and not made under extraordinary circumstances. Jindal Br. at 22 (citing documents where extension was one day late due to medical emergency) (citation omitted).

issued the initial questionnaire.  Jindal Br. at 22-23 (explaining that YGK represented the GOI beginning December 3, 2022, and did not make an entry of appearance on behalf of Jindal until December 30, 2022).  However, the initial questionnaire, which was issued to the GOI, underlined the fact that the "government is responsible for forwarding copies of {the} cover letter and questionnaire to the respondent company."  Initial Questionnaire at 1 (P.R. 28) (emphasis omitted).  Thus, whether YKG accessed the documents as a representative of the GOI or as the representative of Jindal, Jindal Br. at 22, it accessed the questionnaire well before the deadline and was responsible for forwarding the questionnaire to Jindal.  Denial of Extension Request at 2.

Although Jindal explained that it had "no lawyer/representative for this case" in the untimely request for extension of time, it did not assert that it was unaware of the initial questionnaire before the deadline or of its responsibility to file timely submissions.  *See* Jindal Request for Extension.  As Commerce reasoned, Jindal is an experienced respondent and has been a mandatory respondent in several past administrative reviews.  Denial of Extension Request at 2 (Jindal "has been a mandatory respondent in seven of the last ten years that an administrative review has been initiated[.]"); *see also* Jindal Br. at 31-32 (recognizing that "Jindal has been selected as a respondent in nine administrative reviews").  Thus, Jindal's level of experience with this proceeding is beyond that of a first-time respondent and Jindal should have been aware of how Commerce structures its deadlines.  Denial of Extension Request at 2. Jindal had also been on notice that it was subject to this administrative review since September 6, 2022, when Commerce published its initiation notice listing Jindal as one of the subject companies.  *See* Initiation Notice, 87 Fed. Reg. at 54,473.  In light of Jindal's status as an experienced mandatory respondent, Jindal's delay in retaining representation until after its

14

questionnaire response was due demonstrates inattentiveness rather than extraordinary circumstances.

Jindal's final argument is that Commerce "ignored how much time was left in the review" when Commerce denied Jindal's extension request.[4] Jindal Br. at 23-26. As an initial matter, Jindal did not adequately exhaust this argument before Commerce in its case brief to the agency as is required by statute and the regulations, thus preventing Commerce from addressing the merits of it. *See generally* Jindal's Case Brief (P.R. 92); *see also* 28 U.S.C. § 2637(d); 19 C.F.R. § 351.309(c)(2); *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). Moreover, Commerce is not required to accept untimely filings. *Dongtai Peak*, 777 F.3d at 1352; *see also Maverick*, 107 F. Supp. 3d at 1331 ("Strict enforcement of time limits and other requirements is neither arbitrary nor an abuse of discretion when Commerce provides a reasoned explanation for its decision"). While Jindal spends several pages discussing timeliness and finality in various other cases, Jindal Br. at 23-25, the Court's review of the rejection of an untimely filing is made on a case-by-case basis, not by comparing the circumstances of other cases to this one. *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 36 CIT 98, 123 (2012) ("The court's analysis of this issue is necessarily case specific.").[5] In this case, Commerce *did* "evaluate the circumstances of the late filing." Jindal Br. at 25. Commerce explained that it needed the information concerning affiliates or trading companies involved in sales of the

---

[4] Jindal notes that the initial mandatory respondent, SRF, was granted the full extension that it requested, Jindal Br. at 24, but this is inapposite because SRF's request was timely filed. SRF Extension Request (P.R. 16).

[5] Moreover, *Grobest* involved a prior version of Commerce's regulations that did not impose the same "extraordinary circumstances" requirement that governs the Court's review here. *See* 19 C.F.R. § 351.302 (2012); *see also Trinity Mfg., Inc. v. United States*, 549 F. Supp. 3d 1370, 1378-79 (Ct. Int'l Trade 2021), *aff'd*, No. 2022-1329, 2023 WL 234228 (Fed. Cir. Jan. 18, 2023) (explaining regulatory change).

subject merchandise to understand the full extent of subsidies received.  PDM at 6.  By failing to provide the required information by the specified deadlines, Jindal significantly impeded this proceeding.  IDM at 6.

Commerce acted within its discretion and pursuant to its regulations in denying Jindal's untimely request for extension of time to file the affiliated companies' response, and Jindal's arguments to the contrary are unavailing.

III.     <u>Application Of AFA To Jindal Was Supported By Substantial Evidence</u>

Commerce's application of total AFA to Jindal is supported by substantial evidence and is in accordance with law.  Jindal argues that Commerce unlawfully concluded that Jindal failed to cooperate to the best of its ability.  Jindal Br. at 26-27.  Jindal's argument depends on the incorrect premise that Commerce unreasonably rejected Jindal's untimely request for extension of time.  *Id.* at 26 (explaining that Commerce "unreasonably denied Jindal's out-of-time request for extension" and that Commerce's "unreasonable analysis there also tainted its analysis of whether Jindal acted to the best of its ability.").  As explained above, Commerce acted within its discretion in denying Jindal's untimely request for an extension of time.  Commerce's determination that Jindal failed to meet the "best of its ability standard" is supported by substantial evidence and is in accordance with law.

Commerce applies facts otherwise available to fill gaps in the record if "(1) necessary information is not available on the record, or (2) an interested party . . . withholds information that has been requested" by Commerce, "fails to provide such information" in a timely manner "or in the form or manner requested," "significantly impedes {the} proceeding{s}," "or provides information that "cannot be verified."  19 U.S.C. § 1677e(a).  If any one or more of these conditions are satisfied, Commerce may use facts available.  *See Hung Vuong Corp. v. United*

*States*, 483 F. Supp. 3d 1321, 1337-38 (Ct. Int'l Trade 2020).  If Commerce also determines that

a respondent has failed to cooperate "to the best of its ability to comply with a request for

information," it may then apply an adverse inference from among its selection of facts available.

19 U.S.C. § 1677e(b).  Commerce may apply an adverse inference for a respondent's "failure to

cooperate to the best of respondent's ability, regardless of motivation or intent."  *Nippon Steel

Corp. v. United States*, 337 F.3d 1373, 1382-83 (Fed. Cir. 2003).  A respondent fails to act to the

best of its ability when it does not exert "maximum effort to provide Commerce with full and

complete answers to all inquiries in an investigation."  *Id*. at 1382.  Further, the standard requires

that importers "conduct prompt, careful and comprehensive investigations of all relevant records

that refer or relate to the imports in question to the full extent of the importers' ability to do so."

*Id.*  Although this standard does not require perfection, "it does not condone inattentiveness,

carelessness, or inadequate record keeping."  *Id.*

      Commerce's application of AFA to Jindal is supported by substantial evidence.  Because

of Jindal's failure to respond to the affiliated companies portion of the initial questionnaire by

the established deadlines, Commerce reasonably determined that "Jindal significantly impeded

the proceeding," warranting application of facts available pursuant to 19 U.S.C.

§ 1677e(a)(2)(B)-(C).  PDM at 6; IDM at 6.  Commerce explained that it needed a timely-filed

affiliated companies response to analyze affiliations, cross-ownership, and trading company

relationships necessary to determine the "scope of subsidies attributable" to the production of

subject merchandise.  PDM at 6; IDM at 7.  Commerce considered the fact that Jindal took no

steps to seek clarification of the deadlines, and that it failed to monitor the questionnaire deadline

itself or appoint a representative with authority to do so on its behalf until after the response was

due.  IDM at 7.  Jindal states that Jindal's delay in contracting a representative is not

unreasonable given "SRF's initial full engagement in the review." Jindal Br. at 27. This shows, again, that Jindal knew it was subject to administrative review. *See* Initiation Notice, 87 Fed. Reg. at 54,473. Rather than maximum effort, the facts demonstrate carelessness on behalf of Jindal, an experienced respondent in this proceeding. *See* Denial of Extension Request at 2; *see also* Jindal's Br. at 31-32. [6]

Jindal again argues that it did not realize that the affiliated companies response was due before the January 18, 2023 deadline, Jindal Br. at 27, but the initial questionnaire clearly indicated, in bold, that the response to the affiliated companies' questionnaire was due December 26, 2022. Initial Questionnaire (P.R. 29); *see* Jindal Request for Extension at 1. Commerce put parties on notice that it would not accept requested information submitted after the deadline and that such information would be rejected pursuant to its regulations. Initial Questionnaire (P.R. 29) at 3. Moreover, Commerce also explained that a respondent's failure to timely request an extension for all or part of the questionnaire response may result in the rejection of any untimely filed responses and subsequent application of AFA. *Id.* Nevertheless, Jindal still failed to monitor its deadlines and file its response by the deadline. *See* Denial of Extension Request. Again, these facts are indicative of a party's inattentiveness, and not compliance to the best of its ability. Thus, if this Court sustains Commerce's determination to reject the untimely request for extension of time to file the affiliated companies response, then it should also sustain Commerce's application of AFA pursuant to 19 U.S.C. § 1677e(a) and (b). Substantial evidence supports Commerce's determination that Jindal impeded the proceeding and failed to cooperate to the best of its ability by not providing requested information by the deadline.

---

[6] Jindal rehashes its argument that the institutional experience to respond was not extant at the time the review was being conducted, Jindal Br. at 27, but as established above, Jindal has been a mandatory respondent numerous times over the last decade.

18

IV.    <u>Commerce's Selection Of The AFA Rate Was In Accordance With Law</u>

Commerce determined the AFA rate in accordance with the statutory requirements.

Jindal argues that the AFA rate was unlawfully punitive in light of the circumstances of Jindal's

situation.  Jindal Br. at 28, 30-32.  In this review proceeding, Commerce selected the highest

calculated non *de minimis* rate for a noncooperating company "based on identical program rates

calculated by Commerce in prior segments of {the} proceedings[,]" assigning a total AFA rate of

116.96 percent.  PDM at 9; IDM at 13-15.

"{A}s long as a rate is properly corroborated according to the statute, Commerce has

acted within its discretion and the rate is not punitive."  *Papierfabrik Aug. Koehler SE v. United*

*States*, 843 F.3d 1373, 1382 (Fed. Cir. 2016).  Section 1677e(d)(2) authorizes Commerce to rely

on the highest prior rate under certain circumstances.  The statute does *not* require Commerce to

estimate what the countervailing duty rate would have been had the noncooperating respondent

fully cooperated during the proceeding or demonstrate that the subsidy rate assigned to a

noncooperating respondent reflects commercial reality.  19 U.S.C. § 1677e(d)(3)(A)-(B).  Thus,

consistent with the statute, Commerce's practice in countervailing duty reviews is to apply an

AFA rate for a noncooperating company using the highest calculated program-specific rates

determined for the identical or similar programs.  PDM at 7.

Contrary to Jindal's arguments, Jindal Br. at 28-30, and as explained above, Commerce

sufficiently considered the circumstances surrounding Jindal's failure to cooperate when it

applied the AFA rate.  *See* IDM 5-15.  Jindal's argument that Commerce should select an AFA

rate "commensurate with Jindal's efforts and intent to cooperate to the best of its ability[,]"

Jindal Br. at 28, ignores that the statute contains no *mens rea* component, does not require

findings of intent, and does not require use of an estimate for what the rate would have been if

Jindal had cooperated. *See Nippon Steel*, 337 F.3d 1382-83; *see also* 1677e(d)(3); IDM at 14. Similarly, Commerce is not required to examine Jindal's actions "in light of actions by interested parties in other cases." Jindal Br. at 29; 19 U.S.C. § 1677e.[7]

The AFA rate applied to Jindal was not punitive. Commerce explained that each of the AFA program rates assigned in this review were from identical programs calculated by Commerce in prior segments of this same proceeding, in accordance with step one of Commerce's AFA selection hierarchy for administrative reviews. IDM at 15. Thus, the AFA rates selected do not require corroboration by Commerce, *see* 19 U.S.C. 1677e(c)(2), which Jindal acknowledges. Jindal Br. at 31 ("Commerce is not required to corroborate the program-specific rates used here or demonstrate that the countervailing subsidy rate . . . reflects an alleged commercial reality{.}") (citation omitted). Yet, Jindal still insists that the AFA rate used in this review "bears no relationship to Jindal's actual rate." *Id.* However, Jindal's argument conflicts with the express language of the statute, which provides that Commerce is not required to either estimate what Jindal's actual rate would have been or select an AFA rate that reflects commercial reality. 19 U.S.C. § 1677e(d)(3)(A)-(B). Thus, Jindal's arguments regarding the unlawful and punitive nature of the total AFA rate assigned to it in this review are incorrect, and the AFA rate should be sustained. IDM at 15.

---

[7]  Jindal cites "*Shandong Huarong Mach. Co. v. United States*, 13 CIT 1815 (2007)" as an example of "egregious behavior" for which the highest AFA rate should be reserved for, but this case citation leads to *Zoltek Corp. v. United States*, 728 F. Supp. 762, 763 (Ct. Int'l Trade 1989) which does not involve the subject matter ("invoicing scheme") Jindal attributes to it. Jindal Br. at 29. We assume that Jindal means to cite *Shandong Huarong Mach. Co. v. United States*, 30 CIT 1269, 1271 (2006), which does not support Jindal's proposition that the highest AFA rate should be "reserved for the most egregious behavior. The other case Jindal cites, *Elkem Metals Co. v. United States*, 27 CIT 838 (2003), also does not support this proposition. "

## **CONCLUSION**

For these reasons, we respectfully request that the Court sustain Commerce's final results

in their entirety and enter final judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

HENDRICKS VALENZUELA                  /s/ Brittney M. Welch
Of Counsel                            BRITTNEY M. WELCH
                                      Trial Attorney
                                      Department of Justice
U.S. Department of Commerce           Civil Division
Office of the Chief Counsel for       Commercial Litigation Branch
Trade Enforcement & Compliance        PO Box 480, Ben Franklin Station
1401 Constitution Ave., NW            Washington, D.C. 20044
Washington, D.C. 20230                Tel.: (202) 616-3753
                                      Email: brittney.welch@usdoj.gov

December 5, 2024                      Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains approximately 6,407 words, including text, footnotes, and headings, excluding the parts of the brief exempted from the word limitation.  In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

<u>/s/ Brittney M. Welch</u>