**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| **JINDAL POLY FILMS LIMITED,**<br><br>　　　　　　　　**Plaintiff,**<br><br>　　**v.**<br><br>**UNITED STATES,**<br><br>　　　　　　　　**Defendant,**<br><br>　　**and**<br><br>**DUPONT TEIJIN FILMS, MITSUBISHI CHEMICAL AMERICA, INC. – POLYESTER FILM DIVISION, AND SK MICROWORKS AMERICA, INC.,**<br><br>　　　　　　　　**Defendant-Intervenors.** | **Court No. 24-00053** |

<u>**ORDER**</u>

　　　　Upon consideration of the motion for judgment upon the administrative record filed by Plaintiff, responses thereto, Plaintiff's reply, the administrative record, and all other pertinent papers, it is hereby

　　　　ORDERED that Plaintiff's motion is DENIED;

　　　　ORDERED that the Department of Commerce's determination is affirmed in all respects; and it is further

　　　　ORDERED that judgment is entered in favor of the United States.

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　CHIEF JUDGE

Dated:_____

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE**

| | |
|---|---|
| **JINDAL POLY FILMS LIMITED,**<br><br>                    **Plaintiff,**<br><br>    **v.**<br><br>**UNITED STATES,**<br><br>                    **Defendant,**<br><br>    **and**<br><br>**DUPONT TEIJIN FILMS, MITSUBISHI**<br>**CHEMICAL AMERICA, INC. – POLYESTER**<br>**FILM DIVISION, AND SK MICROWORKS**<br>**AMERICA, INC.,**<br><br>                    **Defendant-Intervenors.** | **Court No. 24-00053** |

**DEFENDANT-INTERVENORS' RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Jeffrey I. Kessler
Stephanie E. Hartmann
Sydney J. Warren
Wilmer Cutler Pickering Hale and Dorr
    LLP
2100 Pennsylvania Avenue NW.
Washington, DC 20037

*Counsel for DuPont Teijin Films,*
*Mitsubishi Chemical America, Inc. –*
*Polyester Film Division, and SK*
*Microworks America, Inc.*

Dated: January 10, 2025

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................................................... 1

II.  RULE 56.2 STATEMENT ............................................................................................ 1

    A.  Administrative Determination Under Review ...................................................... 1

    B.  Issues Presented and Summary of Arguments ..................................................... 1

        1.  Whether Commerce lawfully rejected Jindal's untimely
            extension request............................................................................. 1

        2.  Whether Commerce's application of adverse facts available
            ("AFA") to Jindal was supported by substantial evidence and
            otherwise in accordance with law. ................................................. 1

        3.  Whether Commerce's selection of the AFA rate was supported
            by substantial evidence and otherwise in accordance with law ................. 2

III.  STATEMENT OF FACTS ............................................................................................ 2

IV.  STANDARD OF REVIEW .......................................................................................... 6

V.  ARGUMENT ................................................................................................................ 7

    A.  Commerce Correctly Rejected Jindal's Untimely Extension Request
        Because Jindal's Request Does Not Show the Existence of
        "Extraordinary Circumstances" ........................................................................... 7

    B.  Commerce's Application of AFA to Jindal Was Supported by
        Substantial Evidence and Otherwise in Accordance with Law ............................ 9

    C.  Commerce's Selection of the AFA Rate Was Supported by Substantial
        Evidence and Otherwise in Accordance With Law ............................................ 13

VI.  CONCLUSION ........................................................................................................... 14

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Boomerang Tube LLC v. United States*,
  856 F.3d 908 (Fed. Cir. 2017)......................................................................................8

*Corus Staal BV v. United States*,
  502 F.3d 1370 (Fed. Cir. 2007)....................................................................................8

*Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States*,
  992 F.3d 1348 (Fed. Cir. 2021)..................................................................................14

*Jindal Poly Films Ltd. of India v. United States*,
  439 F. Supp. 3d 1354 (CIT 2020) ..............................................................................10

*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 (Fed. Cir. 2003)..................................................................................10

## STATUTES AND REGULATIONS

19 C.F.R. § 351.302 .......................................................................................................7, 9

19 U.S.C. § 1677e ..................................................................................................9, 10, 14

28 U.S.C. § 2637 ...............................................................................................................8

## ADMINISTRATIVE DECISIONS

*Certain Polyethylene Terephthalate Film, Sheet and Strip from India: Final
  Results of Antidumping Duty Administrative Review*, 71 Fed. Reg. 47,485
  (Dep't Commerce Aug. 17, 2006) ...............................................................................13

*Certain Polyethylene Terephthalate Film, Sheet and Strip from India: Final
  Results of Antidumping Duty Administrative Review*, 70 Fed. Reg. 8,072
  (Dep't Commerce Feb. 17, 2005) ................................................................................13

*From India: Final Results of Countervailing Duty Administrative Review; 2020*,
  87 Fed. Reg. 76,024 (Dep't Commerce Dec. 12, 2022) ...........................................11, 13

*Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of
  Antidumping Duty Administrative Review*, 73 Fed. Reg. 71,601 (Dep't
  Commerce Nov. 25, 2008)...........................................................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of
  Antidumping Duty Administrative Review; 2011-2012*, 79 Fed. Reg.
  11,406 (Dep't Commerce Feb. 28, 2014) ....................................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 Fed. Reg. 11,160 (Dep't Commerce Mar. 2, 2015)....................................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2013-2014*, 81 Fed. Reg. 7,750 (Dep't Commerce Feb. 16, 2016) ..................................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 81 Fed. Reg. 91,903 (Dep't Commerce Dec. 19, 2016)................................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 83 Fed. Reg. 6,162 (Dep't Commerce Feb. 13, 2018) ..................................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2016-2017*, 84 Fed. Reg. 9,092 (Dep't Commerce Mar. 13, 2019)................................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 14,883 (Dep't Commerce Mar. 16, 2020)..............................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review*, 75 Fed. Reg. 6,634 (Dep't Commerce Feb. 10, 2010)................................................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review; 2012*, 80 Fed. Reg. 11,163 (Dep't Commerce Mar. 2, 2015)..................................................................11

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2013*, 81 Fed. Reg. 7,753 (Dep't Commerce Feb. 16, 2016) ..................................................................11

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2014*, 81 Fed. Reg. 89,056 (Dep't Commerce Dec. 9, 2016)..................................................................11

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2015*, 83 Fed. Reg. 5,612 (Dep't Commerce Feb. 8, 2018) ....................................................................11

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 10,789 (Dep't Commerce Mar. 22, 2019)................................................................11

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 14,463 (Dep't Commerce Mar. 12, 2020)......................................................................................11

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 26,700 (Dep't Commerce May 17, 2021)......................................................................................11

*Polyethylene Terephthalate Film, Sheet and Strip From India: Partial Rescission of Countervailing Duty Administrative Review; 2011*, 78 Fed. Reg. 2,369 (Dep't Commerce Jan. 11, 2013)......................................................................................12

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Administrative Review of the Antidumping Duty Order; 2010-2011*, 78 Fed. Reg. 9,670 (Dep't Commerce Feb. 11, 2013)......................................................................................12

## I.      **INTRODUCTION**

On behalf of DuPont Teijin Films, Mitsubishi Chemical America, Inc. – Polyester Film Division, and SK Microworks America, Inc. (collectively, "Defendant-Intervenors"), we hereby submit their response to the motion for judgment on the agency record filed by Plaintiff Jindal Poly Films Ltd. ("Jindal"). Plaintiff's Rule 56.2 Memorandum in Support of Motion for Judgment on the Agency Record (ECF No. 22) ("Jindal Br.").

## II.     **RULE 56.2 STATEMENT**

### A.      **Administrative Determination Under Review**

The administrative determination under review is the final results of the U.S. Department of Commerce's ("Commerce") 2021 administrative review of the countervailing duty ("CVD") order on polyethylene terephthalate film, sheet, and strip ("PET film") from India, covering the period January 1, 2021, through December 31, 2021. *See Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 5,490 (Dep't Commerce Jan. 29, 2024) ("*Final Results*"), P.R. 109, and accompanying Issues and Decision Memorandum ("IDM"), P.R. 108.

### B.      **Issues Presented and Summary of Arguments**

#### 1.      **Whether Commerce lawfully rejected Jindal's untimely extension request.**

Yes. Commerce's rejection of Jindal's untimely extension request was in accordance with law because Jindal failed to present any extraordinary circumstances in its request, as Commerce's regulations require.

#### 2.      **Whether Commerce's application of adverse facts available ("AFA") to Jindal was supported by substantial evidence and otherwise in accordance with law.**

Yes.  Commerce's application of AFA to Jindal was supported by substantial evidence and in accordance with law because Jindal failed to timely respond to Commerce's questionnaire and failed to timely request an extension of time.  As such, Commerce lawfully found that Jindal failed to act to the best of its ability and impeded the proceeding such that application of AFA was warranted.

> **3.** **Whether Commerce's selection of the AFA rate was supported by substantial evidence and otherwise in accordance with law**

Yes.  Commerce's selection of the AFA rate was supported by substantial evidence and otherwise in accordance with law because section 1677e(d)(2) of the Tariff Act of 1930, as amended (the "Act"), authorizes Commerce to select the highest rate previously calculated for each subsidy program at issue and does not require Commerce to estimate what the subsidy rates would have been had the noncooperating respondent fully cooperated during the proceeding.

## III.  STATEMENT OF FACTS

On July 1, 2022, Commerce published a notice of opportunity to request an administrative review of the CVD order on PET film from India covering the period from January 1, 2021, through December 31, 2021.  *See Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity To Request Administrative Review and Join Annual Inquiry Service List*, 87 Fed. Reg. 39,461, 39,462 (Dep't Commerce July 1, 2022), P.R. 1.  Defendant-Intervenors requested reviews of the following Indian firms:  Ester Industries Limited; Garware Polyester Ltd.; Polyplex Corporation Ltd.; SRF Limited of India; Jindal Poly Films Ltd. (India); and Vacmet India Limited.  Letter from WilmerHale, Request for Countervailing Duty Administrative Review (Aug. 1, 2022), at 1-2, P.R. 5.  Polyplex USA LLC ("Polyplex") requested review of the following Indian firms:  Ester Industries Ltd.; Garware Polyester Ltd.; Polyplex Corporation Ltd.; SRF Ltd.; Jindal Poly Films Ltd.; Vacmet India Ltd.;

MTZ Polyesters Ltd.; and Uflex Ltd.  Letter from ArentFox, Polyplex USA LLC's Request for

CVD Administrative Review (July 29, 2022), at 1-2, P.R. 4.  SRF Limited ("SRF") requested a

review of itself.  Letter from SRF, Requests for Countervailing Duty (CVD) Admin Review

(July 29, 2022), P.R. 3.

Commerce initiated this review on September 6, 2022, and selected SRF as the sole

mandatory respondent.  *See Initiation of Antidumping and Countervailing Duty Administrative*

*Reviews*, 87 Fed. Reg. 54,463, 54,473 (Dep't Commerce Sept. 6, 2022), P.R. 9; *Polyethylene*

*Terephthalate Film, Sheet, and Strip From India: Preliminary Results of Countervailing Duty*

*Administrative Review and Partial Rescission of Administrative Review; 2021*, 88 Fed. Reg.

50,834 (Dep't Commerce Aug. 2, 2023) ("*Preliminary Results*"), P.R. 90, and accompanying

Preliminary Decision Memorandum ("PDM"),at 2, P.R. 89.  Commerce issued the initial

questionnaire to the Government of India ("GOI") on November 2, 2022, with instructions to

forward the relevant sections to the company respondents.  *See* Letter from Commerce, Initial

Questionnaire (Nov. 3, 2022), P.R. 14, 15.

Polyplex and SRF filed timely requests to withdraw their review requests for all firms,

and Defendant-Intervenors withdrew their review request for all firms with the exception of

Jindal.  Letter from ArentFox Schiff LLP, Withdrawal of Review Request (Dec. 2, 2022), P.R.

20; Letter from SRF Limited, Withdrawal of Review Request (Dec. 5, 2022), P.R. 24; Letter

from WilmerHale, Withdrawal of Review Request (Dec. 5, 2022), P.R. 25.  Thus, Jindal was the

only Indian firm for which an administrative review request was filed and not withdrawn.  On

December 12, 2022, Commerce issued a memorandum stating that it intended to rescind the

administrative review for all firms except Jindal and to select Jindal as the sole mandatory

respondent.  Commerce Memo., Intent to Rescind Review, in Part, and Company Subject to

Individual Examination (Dec. 9, 2022), P.R. 27.  Commerce then re-issued the initial

questionnaire to the GOI with instructions to forward Section III of the questionnaire to the

company respondent, *i.e.*, Jindal.  PDM at 2.

The initial questionnaire states on the first page that the deadline for Jindal to respond to

questions regarding affiliated companies was December 26, 2022, and that the deadline to

respond to the remainder of the questionnaire was January 18, 2022.[1]  Letter from Commerce,

Initial Questionnaire (Dec. 12, 2022), P.R. 29.  Jindal failed to file an affiliated companies

response or request an extension prior to the December 26, 2022 deadline.  Instead, Jindal filed

an untimely request on Saturday, December 31, 2022, nearly a week after the response was due,

asking that the Department retroactively extend the deadline for its affiliated companies

response.  PDM at 2; Letter from YKG and Associates, Extension Request (Dec. 31, 2022), P.R.

33 ("Jindal Affiliated Companies Extension Request").  Jindal stated that it "inadvertently

misconstrued" the deadline for the affiliated companies response because "the concerned person"

at Jindal "was on medical leave for being suffered from severe illness."  Jindal Affiliated

Companies Extension Request, P.R. 33, at 1.

Defendant-Intervenors filed a request to reject Jindal's untimely extension request on

January 5, 2023.  Letter from WilmerHale, Request to Reject Jindal's Untimely and Retroactive

Extension Request (Jan. 5, 2023), P.R. 34.  Defendant-Intervenors noted that the Department's

regulations require that a party seeking an untimely extension demonstrate that an "extraordinary

circumstance" exists, and that Jindal had failed to provide any documentation supporting its

assertion that a medical emergency existed and conceded that its employees failed to

communicate effectively with each other and failed to read and understand the applicable

---

[1] This was an obvious typographical error, as the actual deadline was January 18, 2023.

deadlines. *Id.* at 2-3.  Then, on January 7, 2023, before Commerce responded to Jindal's

untimely extension request or Defendant-Intervenors' request to reject Jindal's untimely

extension request, Jindal filed its affiliated companies response.  IDM at 7.  Defendant-

Intervenors filed a request to reject Jindal's untimely affiliated companies response on January 9,

2023.  Letter from WilmerHale, Request to Reject Jindal's Untimely Response to Section III

Identifying Affiliated Companies Questionnaire (Jan. 9, 2023), P.R. 36.

On January 17, 2023, Commerce suspended all deadlines for both Jindal and the GOI's

responses to the remainder of the initial questionnaire.  Letter from Commerce, Suspension of

Deadline for Initial Questionnaire (Jan. 17, 2023), P.R. 39.  On January 27, 2023, Commerce

denied Jindal's untimely extension request and rejected Jindal's untimely affiliated companies

response.  Letter From Commerce, "Denial of Extension to File Section III of the Initial

Questionnaire Identifying Affiliated Companies" (Jan. 27, 2023), P.R. 42; Letter from

Commerce, Rejection of Jindal Questionnaire (Feb. 15, 2023), P.R. 46.

Jindal filed the remainder of its Section III questionnaire response on February 16, 2023.

Letter from YKG and Associates, Initial Questionnaire Response (Feb. 17, 2023), P.R. 47.  In its

section III response, Jindal included the responses to questions on affiliated companies that it

failed to timely file by December 26, 2022.  *Id.*  Defendant-Intervenors filed a request to reject

Jindal's Section III questionnaire response because it contained information that Commerce had

previously rejected and removed from the record as untimely filed.  Letter from WilmerHale,

Request to Reject Jindal's Section III Questionnaire Response (Mar. 2, 2023), P.R. 70.

Commerce rejected the portion of Jindal's Section III questionnaire response containing its

untimely filed affiliation questionnaire response on March 9, 2023.  Commerce Memo., Reject

Jindal Poly Films Limited's Untimely Filed Section III Questionnaire Identifying Affiliated Companies (Mar. 9, 2023), P.R. 72.

Commerce issued the Preliminary Results on July 27, 2023. *Preliminary Results*, 88 Fed. Reg. at 50,835. Commerce preliminarily applied total AFA to Jindal for failing to timely respond to the affiliated companies' portion of the initial questionnaire and selected an AFA rate of 116.96 percent. *See id.*; *see also* PDM at 5-10. Commerce preliminarily found that, "by not responding to the affiliated companies' portion of the questionnaire in a timely manner, Jindal did not 'do the maximum it is able to do,' and therefore, did not cooperate to the best of its ability." PDM at 6.

Jindal filed a case brief on August 28, 2023, and the GOI filed a case brief on September 5, 2023. Jindal Case Br. (Aug. 28, 2023), P.R. 92; GOI Case Br. (Sept. 5, 2023), P.R. 95. Both briefs argued that Commerce erred in applying total AFA to Jindal. Jindal Case Br. (Aug. 28, 2023), at 8-12, P.R. 92; GOI Case Br. (Sept. 5, 2023), at 9-11, P.R. 95. Defendant-Intervenors filed a rebuttal brief on September 15, 2023, arguing that Commerce properly applied total AFA to Jindal and followed its regulations in selecting an AFA rate. Petitioners' Rebuttal Brief (Sept. 15, 2023), P.R. 99. Jindal attempted to file a surrebuttal brief responding to the arguments in Defendant-Intervenors' rebuttal brief, but Commerce rejected it because Commerce had not provided an opportunity to submit surrebuttal comments. Commerce Memo., Rejection of Surrebuttal Brief (Oct. 4, 2023), P.R. 102. Commerce issued the Final Results on January 23, 2024, making no changes to its AFA determination for Jindal. *See Final Results*, 89 Fed. Reg. at 5,491. This appeal followed.

IV.    **STANDARD OF REVIEW**

Defendant-Intervenors agree with the standard of review provided in Defendant's response brief and incorporate this standard by reference. *See* Def. Br. at 7-8.

## V.    **ARGUMENT**

### A.    Commerce Correctly Rejected Jindal's Untimely Extension Request Because Jindal's Request Does Not Show the Existence of "Extraordinary Circumstances"

Defendant-Intervenors agree with Defendant's arguments that Commerce correctly rejected Jindal's Saturday, December 31, 2022, extension request and incorporate these arguments by reference.  *See* Def. Br. at 8-16.  Commerce's regulations provide that "an untimely filed extension request will not be considered unless the party demonstrates that an extraordinary circumstance exists."  19 C.F.R. § 351.302(c).  The regulation provides further that "{a}n extraordinary circumstance is an unexpected event that: (i) {c}ould not have been prevented if reasonable measures had been taken, and (ii) {p}recludes a party or its representative from timely filing an extension request through all reasonable means."  *Id.* § 351.302(c)(2).  The instructions for the initial questionnaire cite this regulation and also explain that "{a}n extraordinary circumstance is extremely rare and may include 'a natural disaster, riot, war, force majeure, or medical emergency.'"  Letter from Commerce, Initial Questionnaire (Nov. 3, 2022), at 3, P.R. 14.

Jindal argues that Commerce abused its discretion when it denied Jindal's untimely extension request because Commerce "misunderstood Jindal's argument regarding extraordinary circumstances {and} failed to recognize ambiguities in the questionnaire."  Jindal Br. at 19.  Jindal stated in its untimely extension request that it failed to meet the deadline to submit its affiliation response because "the concerned person" at Jindal "was on medical leave for being suffered from severe illness."  Jindal Affiliated Companies Extension Request at 1, P.R. 33.  However, Jindal failed to provide any supporting documentation, failed to identify the relevant employee, and failed to establish that the relevant employee was responsible for responding to

the questionnaire or requesting an extension.  *See id.*  As Defendant observed, Jindal did not even claim that the alleged medical leave prevented a timely extension request.  Def. Br. at 11.

Rather, Jindal effectively conceded that the employee's medical leave was not the proximate cause of its failure to request a timely extension.  Jindal Affiliated Companies Extension Request, P.R. 33.  Jindal stated that there was a "communication gap" between Jindal's employees and "inadvertent misconstru{al}" of the Department's deadlines.  *Id.* at 1.  Thus, none of the cases that Jindal cites involving medical emergencies as "extraordinary circumstances" are even on point, *see* Jindal Br. at 21-22, in addition to the other reasons Defendant explained for why the Court should disregard them.  Def. Br. at 11-13.

In its brief to the Court, Jindal claims that the "mistake" or "misconstruction" that Jindal described in its untimely extension request "was based upon the confusing deadlines listed in the questionnaire:  there are two deadlines for Section III . . . which to an untrained reader may appear to present options."  Jindal Br. at 20-21.  Jindal failed to present this argument about the alleged ambiguity of the instructions, and apparent "options" for deadlines, in its administrative case brief and therefore failed to exhaust its administrative remedies.[2]

Nonetheless, the failure of Jindal's employees to read and understand the deadlines applicable to the initial questionnaire does not constitute "extraordinary circumstances" within the meaning of Commerce's regulation.  Further, as Defendant observes, Jindal took no steps to seek clarification of the relevant deadlines prior to filing the untimely extension request.  Def. Br. at 11.  Jindal's unrepresented status is not an impediment to seeking clarification of the

---

[2] Pursuant to 28 U.S.C. § 2637(d), "the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  The CIT "takes a 'strict view' of the requirement that parties exhaust their administrative remedies before the Department of Commerce in trade cases."  *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) ("{A}bsent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies"); *see also Boomerang Tube LLC v. United States*, 856 F.3d 908, 912-3 (Fed. Cir. 2017) (holding that the CIT erred in considering the merits of an argument not exhausted before Commerce).

questionnaire instructions, and also does not rise to the level of "extraordinary circumstances" that would have prevented it from filing a timely extension request. *Cf.* Jindal Br. at 23. Indeed, the regulation states that an "extraordinary circumstance" is one that "{p}recludes *a party* or its representative from timely filing an extension request through all reasonable means." 19 C.F.R. § 351.302(c)(2) (emphasis added).

Accordingly, Commerce's rejection of Jindal's untimely extension request and affiliation response was supported by substantial evidence, in accordance with law, and not an abuse of discretion.

**B.    Commerce's Application of AFA to Jindal Was Supported by Substantial Evidence and Otherwise in Accordance with Law**

Jindal argues that Commerce's finding that Jindal did not act to the best of its ability was based on the "same erroneous and unreasonable analysis" as Commerce's rejection of Jindal's untimely extension request, and that the circumstances show that Jindal had put forth "maximum effort." Jindal Br. at 26-27. Defendant argues in response that Commerce's application of total AFA to Jindal was supported by substantial evidence and otherwise in accordance with law. *See* Def. Br. at 16-18. Defendant-Intervenors agree with Defendant's argument and incorporates it by reference.

Section 776 of the Act empowers Commerce to use the "facts otherwise available" to make determinations where "necessary information is not available on the record" or where an interested party: (1) "withholds information that has been requested" by Commerce; (2) fails to provide information within the established deadlines or in the form or manner requested, subject to section 782 of the Act; or (3) significantly impedes an investigation. 19 U.S.C. § 1677e(a). If Commerce finds that "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," the statute allows Commerce to "use an

inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id.* § 1677e(b)(1); *see also Jindal Poly Films Ltd. of India v. United States*, 439 F. Supp. 3d 1354, 1363 (CIT 2020). A respondent fails to act to the best of its ability when it does not exert "maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).

Jindal argues that "{t}he circumstances that led to Jindal missing the deadline show that Jindal was putting forward maximum effort," and that Jindal stated in its untimely extension request that it was "*working diligently* to collect and review the required information." Jindal Br. at 27 (emphasis original). In essence, Jindal argues that "maximum effort" under the "best of its ability" standard is self-judging, and that Commerce should refrain from applying total AFA if a respondent asserts that it *tried* its best. However, this is not how the courts have interpreted the standard. As the Federal Circuit explained in *Nippon Steel*:

> Compliance with the "best of its ability" standard is determined by assessing whether respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation. While the standard does not require perfection and recognizes that mistakes sometimes occur, *it does not condone inattentiveness, carelessness,* or inadequate record keeping.

*Nippon Steel*, 337 F.3d at 1382 (emphasis added).

Here, the record shows that Jindal was careless, inattentive, and repeatedly failed to comply with Commerce's instructions and regulations. Jindal conceded in its case brief to Commerce that it was aware of the January 18, 2023, deadline for responding to section III of the initial questionnaire and that it made a "mistake" in not noticing the additional deadline of December 26, 2022, for the affiliated companies portion of the questionnaire. Letter from YGK and Associates, Jindal Case Brief (Aug. 28, 2023) at 8-9, P.R. 92, C.R. 75. However, Commerce reasonably found that Jindal did not "do the maximum it is able to do" because of its

- 10 -

carelessness and inattentiveness to the questionnaire instructions. Commerce explained that it needed a timely-filed affiliated companies response to analyze affiliations, cross-ownership, and trading company relationships to determine the "scope of subsidies attributable" to the production of subject merchandise. PDM at 6; IDM at 7. Commerce also noted that Jindal took no steps to seek clarification of the deadlines and failed to adequately monitor the questionnaire deadline. IDM at 7.

As Defendant observes, Jindal is an experienced respondent that has participated in numerous administrative reviews over the past decade, Def. Br. at 18, including reviews of both the CVD order and the companion antidumping duty order. *Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2020*, 87 Fed. Reg. 76,024 (Dep't Commerce Dec. 12, 2022); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 26,700 (Dep't Commerce May 17, 2021); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 14,463 (Dep't Commerce Mar. 12, 2020); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 10,789 (Dep't Commerce Mar. 22, 2019); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2015*, 83 Fed. Reg. 5,612 (Dep't Commerce Feb. 8, 2018); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2014*, 81 Fed. Reg. 89,056 (Dep't Commerce Dec. 9, 2016); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2013*, 81 Fed. Reg. 7,753 (Dep't Commerce Feb. 16, 2016);

*Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review; 2012*, 80 Fed. Reg. 11,163 (Dep't Commerce Mar. 2, 2015); *Polyethylene Terephthalate Film, Sheet and Strip From India: Partial Rescission of Countervailing Duty Administrative Review; 2011*, 78 Fed. Reg. 2,369 (Dep't Commerce Jan. 11, 2013); *Polyethylene Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty Administrative Review*, 75 Fed. Reg. 6,634 (Dep't Commerce Feb. 10, 2010); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2017-2018*, 85 Fed. Reg. 14,883 (Dep't Commerce Mar. 16, 2020); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2016-2017*, 84 Fed. Reg. 9,092 (Dep't Commerce Mar. 13, 2019); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2015-2016*, 83 Fed. Reg. 6,162 (Dep't Commerce Feb. 13, 2018); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2014-2015*, 81 Fed. Reg. 91,903 (Dep't Commerce Dec. 19, 2016); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2013-2014*, 81 Fed. Reg. 7,750 (Dep't Commerce Feb. 16, 2016); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 Fed. Reg. 11,160 (Dep't Commerce Mar. 2, 2015); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Antidumping Duty Administrative Review; 2011-2012*, 79 Fed. Reg. 11,406 (Dep't Commerce Feb. 28, 2014); *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Administrative Review of the Antidumping Duty Order; 2010-2011*, 78 Fed. Reg. 9,670 (Dep't Commerce Feb. 11, 2013); *Polyethylene Terephthalate Film, Sheet, and Strip from India: Final*

*Results of Antidumping Duty Administrative Review*, 73 Fed. Reg. 71,601 (Dep't Commerce Nov. 25, 2008); *Certain Polyethylene Terephthalate Film, Sheet and Strip from India: Final Results of Antidumping Duty Administrative Review*, 71 Fed. Reg. 47,485 (Dep't Commerce Aug. 17, 2006); *Certain Polyethylene Terephthalate Film, Sheet and Strip from India: Final Results of Antidumping Duty Administrative Review*, 70 Fed. Reg. 8,072 (Dep't Commerce Feb. 17, 2005).

Further, while Jindal was not selected as a mandatory respondent in the prior CVD review (covering calendar year 2020), it participated in that prior review by filing a case brief. *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2020*, 87 Fed. Reg. 76,024 (Dep't Commerce Dec. 12, 2022). Thus, Jindal's claims that it did not "retain{ } experience" because it was not selected as a mandatory respondent in the prior two CVD reviews and had not yet contracted with legal counsel for this review falls flat. Jindal Br. at 27.

In sum, Commerce's decision to apply total AFA was supported by substantial evidence and otherwise in accordance with law.

C.     **Commerce's Selection of the AFA Rate Was Supported by Substantial Evidence and Otherwise in Accordance With Law**

Defendant-Intervenors agree with Defendant's arguments that Commerce's selection of an AFA rate was supported by substantial evidence and otherwise in accordance with law and incorporates these arguments by reference. *See* Def. Br. at 19-20. Jindal argues that Commerce unlawfully selected the highest program-specific rates because it did not conduct a proper evaluation of the situation that resulted in applying AFA. Jindal Br. at 28-30. Jindal further argues that the AFA rate that Commerce assigned was punitive and therefore unlawful. Jindal Br. at 30-32. However, as Defendant explains, section 1677e(d)(2) of the Act expressly

authorizes Commerce to rely on the highest subsidy rate previously calculated for the same

subsidy program(s) and does not require Commerce to estimate what the countervailing duty rate

would have been had the noncooperating respondent fully cooperated during the proceeding.  19

U.S.C. § 1677e(d)(3)(A)-(B); *Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United

States*, 992 F.3d 1348, 1353-54 (Fed. Cir. 2021) (affirming Commerce's selection of an AFA

rate that was decades old).  Thus, the plain language of the statute contradicts Jindal's arguments.

## VI.    CONCLUSION

For these reasons, we respectfully request that the Court reject Jindal's motion in its

entirety, sustain Commerce's Final Results, and enter final judgment in favor of the United

States.

Respectfully submitted,

/s/ Stephanie E. Hartmann
Jeffrey I. Kessler
Stephanie E. Hartmann
Sydney J. Warren
Wilmer Cutler Pickering Hale and Dorr
   LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6564
Facsimile: (202) 663-6363
Email: stephanie.hartmann@wilmerhale.com

*Counsel for DuPont Teijin Films,
Mitsubishi Chemical America, Inc. –
Polyester Film Division, and SK
Microworks America, Inc.*

Dated: January 10, 2025

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court and the Court's scheduling order in that it contains approximately 3,985 words, including text, footnotes, and headings, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

/s/ Stephanie E. Hartmann
(Signature of Attorney)

Stephanie E. Hartmann
(Name of Attorney)

DuPont Teijin Films, Mitsubishi Chemical America, Inc. – Polyester Film Division, and SK Microworks America, Inc.
(Representative Of)

January 10, 2025
(Date)