THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| **JINDAL POLY FILMS LIMITED.** | |
| **Plaintiff,** | |
| **v.** | **Court No. 24-00053** |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **DUPONT TEIJIN FILMS, MITSUBISHI CHEMICAL AMERICA, INC. – POLYESTER FILM DIVISION, AND SK MICROWORKS AMERICA, INC.** | |
| **Defendant-Intervenors.** | |

**REPLY BRIEF OF PLAINTIFF JINDAL POLY FILMS LTD., FOR JUDGMENT ON THE AGENCY RECORD**

Irene H. Chen
VCL Law LLP
1945 Old Gallows Road, Suite 260
Vienna, VA 22182
Tel: (301) 760-7393
Fax: (301) 263-7700
Email: ichen@vcllegal.com

Mark B. Lehnardt
Davis & Leiman
1012 Connecticut Ave., N.W., Ste. 1012
Washington, DC 20036
Tel: (202) 642-4850
Email:  mlehnardt@dltrade.com

*Counsel to Plaintiff Jindal Poly Films Ltd.*

February 10, 2025

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................. 1

I.    COMMERCE'S REJECTION OF JINDAL'S OUT-OF-TIME EXTENSION REQUEST
WAS AN ABUSE OF DISCRETION AND UNSUPPORTED BY SUBSTANTIAL
EVIDENCE ............................................................................................................. 2

    A.   Commerce Must Provide A Reasoned Explanation For Its Actions And May Not
Abuse Its Discretion ........................................................................................... 2

    B.   Commerce Abused Its Discretion When It Denied Jindal's Out-Of-Time Request For
Extension Of Time .............................................................................................. 3

        1.   Commerce wrongly claims that medical leave for severe illness is not "a medical
emergency" .................................................................................................. 3

        2.   Commerce falsely asserts that Jindal's representative accessed the questionnaire
when Jindal demonstrably was not represented ............................................ 5

        3.   Commerce wrongly ignored the early timing in the review of Jindal's request ........ 8

        4.   Other Commerce excuses do not justify the unreasonable denial of Jindal's
extension request ......................................................................................... 10

II.   DOC AND DEFENDANT-INTERVENORS RELY ON IMPERMISSIBLE *POST HOC*
RATIONALIZATIONS ........................................................................................ 12

III.   COMMERCE UNLAWFULLY CONCLUDED THAT JINDAL FAILED TO
COOPERATE TO THE BEST OF ITS ABILITY ................................................ 14

IV.   COMMERCE UNLAWFULLY SELECTED THE HIGHEST PROGRAM-SPECIFIC
RATES BECAUSE IT DID NOT CONDUCT AN EVALUATION OF THE SITUATION
THAT RESULTED IN APPLYING AFA .............................................................. 15

V.   CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*BMW of N. Am. LLC v. United States*, 926 F.3d 1291 (Fed. Cir. 2019) ....................................... 15

*Borlem S.A.-Empreedimentos Industriais v. United States,* 13 CIT 535, 541, 718 F. Supp. 41, 46

    (1989) ............................................................................................................................................ 12

*Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (Ct. Int'l Trade 2019)........................... 3

*Cambria Co. LLC v. United States*, 705 F. Supp. 3d 1369 (Ct. Int'l Trade 2024).................... 3, 15

*Celik Halat ve Tel Sanayi A.S. v. United States*, 483 F. Supp. 3d 1370, 1379 (Ct. Int'l Trade

    2020) .............................................................................................................................................. 7

*Celik Halat Ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363 (Ct. Int'l Trade 2022). 4, 5,

    12

*Celik Halat Ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363, 1374 (Ct. Int'l Trade

    2022); *Timken United States Corp. v. United States*, 434 F.3d 1345, 1353-54 (Fed. Cir. 2006) 6

*Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313,

    1325 (Ct. Int'l Trade 2013) ......................................................................................................... 11

*Grupo Acerero S.A.de C.V. v. United States,* 698 F. Supp. 3d 1320 (2024)......................... 2, 4, 11

*Hiep Thanh Seafood Joint Stock Co. v. United States*, 34 Ct. Int'l Trade 1428, 1434, 752 F. Supp.

    2d 1330, 1335-36 (2010).............................................................................................................. 12

*MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355-56 (Ct. Int'l Trade 2015) ....... 6

*Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318 (2015)........................................... 2

*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003)......................................... 15

*NTN Bearing Corp. v. United States,* 74 F.3d 1204 (Fed. Cir. 1995)............................................. 3

*Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 Ct. Intl. Trade LEXIS 28 (Ct. Int'l

    Trade Feb. 15, 2023).................................................................................................................... 15

*Pro-Team Coil Nail Enter., Inc. v. United States*, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019).... 9

*Rhone Poulenc, Inc. v. United States*, 899 F. 2d 1185 (Fed. Cir. 1990) ...................................... 16

*SNR Roulements v. United States*, 402 F.3d 1358 (Fed. Cir. 2005)............................................. 16

*Star Fruits S.N.C v. United States*, 393 F.3d 1277 (Fed. Cir. 2005)................................................ 3

*Timken Co. v. United States*, 894 F.2d 385, 389 (1990) .............................................................. 12

*Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006) ........................................... 9

*Trust Chem Co., v. United States*, 791 F. Supp. 2d 1257 (Ct. Int'l Trade 2011)......................... 14

*Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370 (Fed. Cir. 2013).... 15

**Statutes**

19 U.S.C. § 1675(a)(3)(A) ...............................................................................................................8

**Other Authorities**

Merriam-Webster.com Dictionary, <<https://www.merriam-
    webster.com/dictionary/misconstrue>> ....................................................................................7

**Administrative Determinations**

*Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed.
    Reg. 54,463, 54,465 (Dep't of Commerce Sep. 6, 2022) .........................................................9

*Notice of Amended Final Antidumping Duty Determination of Sales at Less Than
    Fair Value and Antidumping Duty Order: Polyethylene Terephthalate Film,
    Sheet, and Strip from India*, 67 Fed. Reg. 44,175 (Dep't of Commerce July 1,
    2002) .........................................................................................................................................8

Plaintiff Jindal Poly Films Ltd. ("Jindal") respectfully submits this reply brief to the briefs in opposition filed by Defendant, the United States, ("Defendant" or "Commerce") and Defendant-Intervenors, DuPont Teijin Films, Mitsubishi Chemical America, Inc. – Polyester Film Division, and SK Microworks America, Inc. ("Defendant-Intervenors").

## ARGUMENT

Commerce's application of facts available with an adverse inference ("AFA") to Jindal due to a late filed submission is not supported by substantial evidence or in accordance with law. Commerce abused its discretion by denying Jindal's out-of-time extension request, filed just days after the due date, to submit its response to the Affiliated Companies Questionnaire. The circumstances of Jindal are why out-of-time extensions are required for Commerce to act reasonably and comply with the overriding directive to calculate margins accurately as possible: Jindal's designated company official for trade responses was on medical leave due to a severe illness and misconstrued the deadline based upon ambiguous language in the deadline dates listed. And the deadline for the preliminary results was still more than six months away.

Commerce argues that it considered the circumstances in Jindal's extension request, rejecting Jindal's claim of extraordinary circumstances on its claim that Jindal's employee was not suffering a medical emergency. But Commerce's review was riddled with errors. Commerce unreasonably weighed the facts and circumstances in denying Jindal's extension request. Commerce incorrectly described the timing of Jindal's filing, misunderstood Jindal's argument regarding extraordinary circumstances, failed to account for ambiguities in the deadlines listed on the questionnaire, incorrectly claimed Jindal's counsel accessed the questionnaire before the deadline, ignored Jindal's unrepresented status, and failed to consider how much time was left in the review.

1

In its *Final Results*, Commerce resorted to adverse facts available ("AFA") to determine Jindal's CVD duty rate based entirely upon Jindal having missed a filing deadline. Commerce's application of AFA is not supported by substantial evidence.

Even were this Court were to uphold Commerce's application of AFA to Jindal despite these serious and harmful errors, Commerce nevertheless further erred in applying the unduly punitive highest program specific rates to Jindal as AFA.

## I. COMMERCE'S REJECTION OF JINDAL'S OUT-OF-TIME EXTENSION REQUEST WAS AN ABUSE OF DISCRETION AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

Commerce's denial of Jindal's out-of-time extension request for its Affiliated Companies questionnaire was an abuse of discretion and is unsupported by substantial evidence. Contrary to Commerce's argument, it did not act reasonably when rejecting Jindal's extension request and exceeded its discretion given the extraordinary circumstances of Jindal's extension request. Commerce did not accurately or reasonably address Jindal's facts and circumstances. Thus, Commerce's decision to reject Jindal's extension request was unsupported by substantial evidence and constituted an abuse of discretion.

### A. Commerce Must Provide A Reasoned Explanation For Its Actions And May Not Abuse Its Discretion

Commerce must provide a reasoned explanation for its actions, and it may not abuse its discretion in enforcing deadlines. *Maverick Tube Corp. v. United States*, 107 F. Supp. 3d 1318, 1331 (2015)(strict enforcement of deadlines is not an abuse of discretion if the Department provides a reasoned explanation for its decision. *Grupo Acerero S.A.de C.V. v. United States,* 698 F. Supp. 3d 1320, 1332 (2024)( "But {Commerce's} discretion "is not absolute.").

Commerce abuses its discretion when it issues a decision that "represents an unreasonable judgement in weighing relevant factors." *Bosun Tools Co. v. United States*, 405 F.

Supp. 3d 1359, 1364-65 (Ct. Int'l Trade 2019)(citing *Star Fruits S.N.C v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).  Commerce also "must" waive its extraordinary circumstance standard when "failure to do so would amount to an abuse of discretion."  *Cambria Co. LLC v. United States*, 705 F. Supp. 3d 1369, 1378 (Ct. Int'l Trade 2024)(*citing NTN Bearing Corp. v. United States,* 74 F.3d 1204, 1207 (Fed. Cir. 1995)).

> B.    Commerce Abused Its Discretion When It Denied Jindal's Out-Of-Time Request For Extension Of Time

Commerce's judgment regarding the facts and circumstances at issue was unreasonable in light of (1) the medical leave for severe illness of the Jindal employee responsible for coordinating Jindal's response, (2) ambiguities in the deadlines listed on the questionnaire, (3) Jindal's unrepresented status at the time the questionnaire was issued and the response was due, and (4) the significant time remaining in the review.   Commerce insists that it "considered the circumstances proffered by Jindal," but Commerce couldn't even get the facts straight. Commerce first acknowledged that "on December 31, 2022,{ } we received the Jindal's extension request," then two paragraphs later claimed, "Jindal did not file a request to extend the deadline until…January 3, 2023."  PR42, Denial Mem.,1-2.  Commerce also claimed that Jindal's representative accessed the questionnaire on December 12,13, and 15, *Id.,*at 2, when the record clearly establishes that Jindal was not represented until December 30.  PR30, Entry of Appearance.Commerce failed to consider Jindal's circumstances, thus its rejection of Jindal's extension request should be remanded for Commerce to grant the extension and calculate Jindal's margin.

> **1.    Commerce wrongly claims that medical leave for severe illness is not "a medical emergency"**

First, Commerce incredibly claims that medical leave for a severe illness is not "a medical emergency that prevented a timely request for an extension of time."  *See* PR42, *Denial*

*of EOT Request*, at 1 & nn.1-2; DOC Br. at 11.  This perverse claim is of the same ilk as Commerce finding that the deaths of three key accountants while the company was preparing responses did not justify an extension.  *Grupo Acerero*, 698 F. Supp. 3d at 1332.  This Court has been specifically cognizant of medical issues affecting a company's ability to file by deadlines imposed by Commerce.  *See id.; Celik Halat Ve Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363, 1377 (Ct. Int'l Trade 2022). But Commerce cannot consider the severe medical illness in a vacuum; Commerce must reasonably weigh all of the relevant circumstances surrounding the missed deadline.  Here, Jindal explained it had been a few years since it had been a mandatory respondent, and that the severe illness and medical leave of the employee concerned resulted in a misconstruction of the applicable deadline.  Thus, Jindal plainly stated that its institutional knowledge was on unexpected medical leave, and confusion of untrained employees, caused by unfamiliarity with Commerce proceedings and ambiguous language used by Commerce to describe deadlines, prevented the timely filing of an extension request.  PR33, Extension Request, at 1 ("it was ***inadvertently misconstrued*** that the respondent has to file only questionnaire response for which the deadline is January 18, 2023.  However, now it has come to light that '**Section III Identifying Affiliated Companies'** affiliated part information is also required to file by the respondent which was due for filing on December 26, 2022").  These circumstances are an extraordinary circumstance because a severe illness is an "unexpected event" that could not have been prevented "if reasonable measures had been taken."  Reasonable corporate measures cannot prevent severe illness (which is never expected or predictable).

With Jindal's institutional knowledge unexpectedly unavailable, the confusion among other employees – neophytes to Commerce's scores of pages of legalese, instructions, and appendices – when they looked at ambiguous descriptions of the deadlines, was a direct result of

the unexpected medical circumstances. This Court in *Celik Halat* concluded that Commerce, in denying an out of time extension request for counsel recovering from knee surgery, abused its discretion when it made several findings of fact unsupported by record evidence and imposed a draconian sanction for a minor and technical violation that had no discernible effect on the investigation. *Celik Halat*, 557 F. Supp. 3d at 1381.

Nowhere in Commerce's letter denying Jindal's extension request does it address the Jindal's representative's illness in the context of the ambiguity in the questionnaire.

### 2. Commerce falsely asserts that Jindal's representative accessed the questionnaire when Jindal demonstrably was not represented

Second, Commerce provides *post hoc* rationalizations after Jindal highlighted the fact that – contrary to Commerce's claim – Jindal did not have a representative that accessed the questionnaire on December 12-13 and 15. Pivoting from its stated – and mistaken – rationale that a Jindal representative accessed the questionnaire, Commerce for the first time argues that whether Jindal's representative (as of December 30, 2022) (YKG) accessed the documents on December 12-15 "as a representative of the GOI or as the representative of Jindal, it accessed the questionnaire well before the deadline and was responsible for forwarding the questionnaire to Jindal." DOC Br. at 14. Regardless of Commerce's inability to recognize that it was wrong about who accessed the questionnaire on December 12-15, Commerce's pivot from that erroneous finding is an impermissible *post hoc* rationalization and cannot be considered by the Court. .*Timken Co. v. United States*, 894 F.2d 385, 389 (1990) Further, whether YKG viewed the questionnaire prior to the due date is of no consequence, Jindal's December 31 request clarifies that Jindal was confused about the deadline until after it passed.

Commerce improperly insists that Jindal should have been aware of the Affiliated Companies questionnaire deadline, incorrectly claiming that respondents are tasked with " strict

adherence to statutory and regulatory deadlines"  It is significant, however, that it was the

company's "concerned person" for AD responses was the person out on medical leave.  The

company is not staffed with trade lawyers but with people who focus on production, sales,

logistics, and accounting.  Unrepresented foreign companies require a little more accommodation

before Commerce can rely upon pages of nearly impenetrable legalese to impose draconian

penalties for minor delays.

Commerce exaggerates when it asserts that "every missed deadline impacts Commerce's

ability to comply with its statutory responsibility in each review."  DOC Br. at 9.  This statement

is both true and meaningless.  Any reduction of time has some effect, but the statement

nonsensically claims that a filing two weeks after a missed deadline is prejudicial, while a filing

after a two-week extension is not.  It is not the missed deadline, but the amount of delay that has

a prejudicial effect. This Court regularly points to remaining time before the preliminary results

or the final results as undermining Commerce's claims of prejudice.  *See Celik Halat Ve Tel

Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363, 1374 (Ct. Int'l Trade 2022); *Timken United

States Corp. v. United States*, 434 F.3d 1345, 1353-54 (Fed. Cir. 2006).

Further, contrary to Commerce's claim that its administratively-set deadlines are

absolute, DOC Br. at 9, Commerce regularly extends its own deadlines upon timely and out-of-

time requests, and this Court has held that "Commerce's discretion "is bounded at

the outer limits by obligation to carry out its statutory duty of 'determining dumping margins

"as accurately as possible.""  *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355-

56 (Ct. Int'l Trade 2015).  Further, "Commerce abuses its discretion when it rejects information

that would not be burdensome to incorporate and which would increase the accuracy of the

calculated subsidy rate." *Celik Halat ve Tel Sanayi A.S. v. United States*, 483 F. Supp. 3d 1370, 1379 (Ct. Int'l Trade 2022).

Commerce sidesteps the ambiguities in the questionnaire, claiming that, because Jindal acknowledged in its extension request that the response was due on December 26, 2022, "the late filing was attributed to an 'inadvertent { } misconstru{ction}' on the part of inexperienced personnel, not based on an alleged ambiguity in the questionnaire itself." DOC Br. at 11. But that is exactly the point: it took an experienced representative to understand that Commerce was not providing options.

The questionnaire lists two deadlines for Section III, *see* PR29, *Questionnaire*, at 1, which to an untrained reader may appear to present options or simply to be errors. The first deadline is for "RESPONSE to SECTIONS II and III" on "January 18, 2022," and obvious error in a questionnaire issued on December 12, 2022. The deadline listed second is a second deadline for Section III, "RESPONSE to SECTION III IDENTIFYING AFFILIATED COMPANIES," *id.*, and – to the untrained eye –seems like either an alternative or another error.  The deadline Commerce claims comes first is listed second, and the deadline Commerce claims comes second was listed as 11 months earlier than the deadline it claims to be first.  The language Commerce selected for establishing deadlines was confusing.  To the extent Commerce insists on relying on the language of its questionnaire to impose draconian penalties, Commerce must ensure that the language is error-free and does not mislead foreign audiences into believing alternative possibilities.  Moreover, Commerce disregards the definition of the word "misconstrued" and that its questionnaire does in fact contain an ambiguity regarding the deadlines for Jindal's response.  The Merriam-Webster dictionary defines the word "misconstrue" as follows:

> **:** to interpret (something, such as a statement or action) wrongly **: __misinterpret__**
> *misconstrued* her words/meaning/silence

> He does not want his real name used in the newspaper because even the most
> innocent statement could be *misconstrued* here and lead to trouble, he says.—
> Lynne Duke I instantly turned away, lest he should see and *misconstrue* my
> emotion.—Anne Brontë

"misconstrue," Merriam-Webster.com Dictionary, <<https://www.merriam-webster.com/dictionary/misconstrue>> (accessed 2/9/2025). That the Jindal employee reasonably misconstrued or misinterpreted the language to provide alternatives necessarily implies ambiguity in Commerce's questionnaire.

Commerce also rejects responsibility when it claims that "any misconstruction by Jindal about the appropriate deadline resulted from its own inattentiveness, not because of alleged ambiguities in the questionnaire," and that "Jindal was *entirely* responsible for the misconstruction of the deadline." DOJ Br. at 11 & n.2. But Commerce's claims are undermined by what are unquestionably Commerce's own errors in the questionnaire – the incorrect deadline for Sections II and III, and language that appears to set alternative possible deadlines. While Commerce is quick to exonerate itself and condemn Jindal, the errors Commerce failed to correct in the questionnaire created ambiguities that contributed to Jindal's initial confusion over the due date.

### 3. Commerce wrongly ignored the early timing in the review of Jindal's request

Commerce mistakenly claimed that Jindal did not file the extension request until a week after the deadline, on January 3, 2023, despite Jindal filing the extension request three days earlier, on December 31, 2022. *Id.* Lost in Commerce's focus on the number of days after the deadline that Jindal filed it out-of-time extension request, however, is the fact that the deadline was the first deadline in an administrative year that has an 18-month timeline. A fully extended preliminary results is due 365 days after the end of the anniversary month of the underlying antidumping duty order, *see* 19 U.S.C. § 1675(a)(3)(A), which in this case is July 31, 2023. *See*

*Notice of Amended Final Antidumping Duty Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Polyethylene Terephthalate Film, Sheet, and Strip from India*, 67 Fed. Reg. 44,175 (Dep't of Commerce July 1, 2002).  Fully extended final results are due 180 days after the date on which the preliminary results are published, *see* 19 U.S.C. § 1675(a)(3)(A), which in this case is the end of January 2024.

Here, Commerce initiated the review on September 6, 2022, PR9, *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 87 Fed. Reg. 54,463, 54,465 (Dep't of Commerce Sep. 6, 2022),

Thus, at the time Jindal submitted its out-of-time request for additional time to respond to the questionnaire, 7 months remained until the preliminary results were due, and 13 months remained until the final results were due.  There was more than sufficient time remaining before the preliminary and final results for Commerce to allow the extension, evaluate responses, issue supplemental questionnaires, and calculate preliminary results.

This Court and the Federal Circuit have emphasized that the more time remaining before the preliminary and final results are due makes Commerce's refusal to extend a deadline less reasonable.  *See*, *e.g.*, *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006)(explaining that the Federal Circuit had not prevented correction of errors during the preliminary stage, and the balance between accuracy and finality was only appliable during the final result stage); *Pro-Team Coil Nail Enter., Inc. v. United States*, 419 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2019)(finality concerns not implicated when the respondent failed to timely file a quantity and value submission before the preliminary results and almost eight months before the final result).  Here, where 7 months remained before the preliminary results, and 13 months

remained until the final results, urgency was at its absolute nadir, and at its zenith was the unreasonableness of denying an extension of time – even if requested out-of-time.

### 4. Other Commerce excuses do not justify the unreasonable denial of Jindal's extension request

Commerce faults Jindal for not calling to clarify the deadline. DOC Br. at 11. But this questionnaire was due only two weeks after it was issued to the GOI, and Commerce did not verify delivery to Jindal.  Further, record evidence indicates that Jindal only learned of the actual due date after the deadline passed, and that Jindal filed the extension request as soon as it could, on Saturday, Dec. 31, 2022, rather than waiting another three days, to January 3, 2023, for Commerce to return to the office after the holidays to call and ask Commerce.

Commerce wrongly criticizes Jindal for contesting Commerce's statement in both the *Preliminary Results* and *Final Results* that it has to conduct the review according to strict statutory deadlines. DOC Br. at 9-10.

Commerce stated in the *Preliminary Results* that:

> "Jindal has failed to cooperate to the best of its ability to provide information requested in the Initial Questionnaire. Specifically, Jindal did not provide a timely response to the affiliated companies portion of section III of the Initial Questionnaire by the deadline, December 26, 2022, nor did it timely request an extension of time. As explained in the Initial Questionnaire, "Commerce must conduct this review in accordance with statutory and regulatory deadlines." PR89, PDM at 5-6.

However, Jindal appropriately characterized that statement as a throw-away line because Commerce's own claim of the exigency of the timing of the review was unsupported by the record – the deadline for the preliminary results was 7 months away and more than a year – 13 months – before the *Final Results*.  The lack of exigency is further highlighted by the fact that Commerce accepted the GOI's initial questionnaire response three months later, in April 2023, and its supplemental questionnaire response in June 2023, months after it rejected Jindal's

extension request and subsequently filed Affiliated Companies response. PR. 75-77, PR 81. *See, e.g., Grupo Acerero*, 698 F. Supp. 3d at 1332 ("That the agency's fact-finding process lasted nearly three months after it told Simec no additional time was available undermines any finality justification for Commerce's actions").

Further, because Commerce's regulations allow for out-of-time requests for extensions of time, the mere fact that Jindal did not file a response or request an extension before the deadline cannot support a finding that Jindal did not cooperate to the best of its ability.  Commerce's misrepresents Jindal's experience when claiming that it is an experienced respondent that has been a mandatory respondent in several past reviews.  DOC Br. at 14.  Companies are made up of people, however, and institutional experience and memory in the mind of an individual employee is worthless if he is absent on medical leave for severe illness.

Commerce's actions in treating Jindal's situation differently from other similar cases involving medical issues were arbitrary and capricious. "{A}n 'agency action is arbitrary when the agency offers{s} insufficient reasons for treating similar situations differently.'" *Foshan Shunde Yongjian Housewares & Hardwares Co. v. United States*, 896 F. Supp. 2d 1313, 1325 (Ct. Int'l Trade 2013)(*citations omitted*).  Commerce contends that Jindal did not demonstrate "extraordinary circumstances."  But Commerce failed to address the cases cited by Jindal where Commerce granted other respondents out-of-time extensions due to medical emergencies.

Commerce faults Jindal citing other Commerce administrative determinations for support of its assertion that Commerce has granted extension requests for medical emergencies in the past, claiming that these other cases are not in the underlying record. DOC Br. at 12-13. Commerce cannot excuse itself from accountability for what it has done in other cases, however, on the claim that other cases are factual evidence rather than legal precedent.  The agency's

11

docket is publicly available and easily ascertainable and thus is judicially noticeable.  *See, e.g., Borlem S.A.-Empreedimentos Industriais v. United States,* 13 CIT 535, 541, 718 F. Supp. 41, 46 (1989), aff'd and remanded, 913 F.2d 933 (Fed. Cir. 1990).

Additionally, Commerce claims that Jindal's arguments regarding Commerce's decisions in other cases should not be considered because "there were not part of this record and were not properly raised before the agency. DOC Br. at 12-13. There was no requirement that Jindal file Commerce's other decisions granting extension requests on this record.  Part of Jindal's argument is that Commerce's treatment of Jindal was arbitrary and capricious given that it has previously granted out of time extension requests for cases involving similar medical circumstances as well as minor mistakes of counsel. *Celik Halat Ve Tel Sanayi A.S.*, 557 F. Supp. 3d at 1376-77. Accordingly, Jindal is free to argue Commerce's practice in its brief before this Court.

## II.    DOC AND DEFENDANT-INTERVENORS RELY ON IMPERMISSIBLE *POST HOC* RATIONALIZATIONS

Although Defendant-Intervenors raise several arguments, the Court should ignore those arguments as *post-hoc* rationalization.  A *post hoc* rationalization is an impermissible justification for a determination supplied for the first time by counsel in judicial proceedings. *Timken Co. v. United States*, 894 F.2d 385, 389 (1990) ("The first mention of these justifications appears in Commerce's appeal brief before the CIT. '{A}gency action cannot be sustained on *post hoc* rationalizations supplied during judicial review.'"); *Hiep Thanh Seafood Joint Stock Co. v. United States*, 34 Ct. Int'l Trade 1428, 1434, 752 F. Supp. 2d 1330, 1335-36 (2010) (refusing to affirm based on counsel's justification for Commerce's determination not articulated in final results).  Because Commerce's decision may not be sustained on the basis of *post hoc* rationalization, this Court should ignore the *post hoc* rationalization.

The first *post-hoc rationalization* presented by Defendant-Intervenors is a complaint that Jindal did not provide supporting documentation, identify the relevant employee, or establish that the relevant employee was responsible for responding to the questionnaire or requesting an extension. Def.-Int. Br. at 7. This, however, is an impermissible *post hoc* rationalization, as Commerce never stated this in either the Letter Denying Extension Request or the *Final Results*, and it should not be considered by the Court. The regulation does not require that supporting documentation or the identity of the relevant employee be revealed, which may be due to privacy concerns, but Jindal did state that the "concerned person of the respondent company dealing with the subject matter was on medical leave for being suffered from severe illness." PR33, Extension Request. That statement means that the ill employee was the one responsible for the subject matter, i.e., the questionnaire. Further, this statement was certified by the company as accurate, and Defendant-Intervenors do not attempt to impugn the veracity of that certification. *Id.*

Defendant-Intervenors argue incorrectly that "the employee's medical leave was not the proximate cause of its failure to request a timely extension." Def-Int. Br. at 8. Defendant-Intervenors also incorrectly claim that "Jindal stated that there was a 'communication gap' between Jindal's employees." *Id.* That is incorrect. Jindal never stated that there was a "communication gap" between employees. Jindal stated that it had no lawyer/representative for this case and "due to the communication gap and also because the concerned person of the respondent company dealing with the subject matter was on medical leave for being suffered from severe illness, it was ***inadvertently misconstrued*** " that the questionnaire deadline was January 18, 2023." Contrary to Defendant-Intervenors' claim, the cases cited by Jindal regarding medical emergencies as extraordinary circumstances, including suffering from Covid-19,

13

emergency medical leave, "acute illness" of counsel's child, counsel's family medical emergency, are similar to Jindal's representative's circumstances and therefore on point. Def.-Int. Br. at 8.

Defendant-Intervenors claim that Plaintiff failed to exhaust its administrative remedies. Def-Int. Br. at 8.  But Commerce was "put on notice" of the argument that Jindal "misconstrued" the questionnaire deadlines, leading it to believe that the January 18, 2023 deadline was the first deadline for its questionnaire submission. PR 33 *Jindal Request for Extension of Time*.  There is no obligation that the argument be raised in exactly the same words before the agency. *See Trust Chem Co., v. United States*, 791 F. Supp. 2d 1257, 1268 (Ct. Int'l Trade 2011).

## III.    COMMERCE UNLAWFULLY CONCLUDED THAT JINDAL FAILED TO COOPERATE TO THE BEST OF ITS ABILITY

As demonstrated above, Commerce unreasonably evaluated the extraordinary circumstances leading to Jindal missing the deadline for submitting the AQR and unreasonably denied Jindal's out-of-time request for extension of time to submit the AQR.  Commerce unreasonable analysis there also tainted its analysis of whether Jindal acted to the best of its ability.  Commerce based its decision whether Jindal acted to the best of its ability on the same erroneous and unreasonable analysis.  Accordingly, this Court should remand for Commerce to reconsider its decision whether Jindal's actions warranted AFA.

Commerce argues that it reasonably applied AFA to Jindal because it missed the deadline to file the Affiliated Companies questionnaire deadline and therefore "impeded the proceeding." DOC Br. at 17. Pointing to the missed questionnaire response, Defendant-Intervenors also argue that "the record shows that Jindal was careless, inattentive, and repeatedly failed to comply with Commerce's instructions and regulations.  Def-Int. Br. at 10.  But Commerce's conclusion is

unsupported by substantial evidence. Commerce's own questionnaire was ambiguous regarding the deadlines and Jindal's own AD representative was suffering from a severe illness and on medical leave, leading to the missed deadline. "A single late response is not determinative that a respondent has not acted to the 'best of its ability' to cooperate because 'mistakes sometimes occur.'" *Cambria*, 705 F. Supp. 3d at 1380 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003)).

## IV.    COMMERCE UNLAWFULLY SELECTED THE HIGHEST PROGRAM-SPECIFIC RATES BECAUSE IT DID NOT CONDUCT AN EVALUATION OF THE SITUATION THAT RESULTED IN APPLYING AFA

Commerce argues that in applying the AFA rate to Jindal, it "sufficiently considered the circumstances surrounding Jindal's failure to cooperate." DOC Br. at 19. However, Commerce's explanation, that Jindal missed the initial filing deadline, warrants the highest AFA rate, is not a reasonable or sufficient. "That the facts merited the use of an adverse inference does not necessarily mean that those same facts merited selection of the highest rate." *POSCO v. United States*, 296 F. Supp. 3d 1320, 1349, SLIP OP. 2018-18 (CIT 2018) Section "1677e(d)(2) contemplates the selection of the highest rate when the situation merits the highest rate." *Id.* at 1350. If Commerce fails to reasonably explain why its chosen rate was appropriate, the court must find it inappropriate. *Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 Ct. Intl. Trade LEXIS 28, at *19 (Ct. Int'l Trade Feb. 15, 2023)(citing *BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019).

This Court and the Court of Appeals have repeatedly recognized that the accuracy of a margin of dumping is an overriding objective of the administrative review process. *See, e.g*., *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible.") (citation omitted); *SNR Roulements v.*

*United States*, 402 F.3d 1358, 1363 (Fed. Cir. 2005) ("Antidumping laws intend to calculate antidumping duties on a fair and equitable basis") (citations omitted); *Rhone Poulenc, Inc. v. United States*, 899 F. 2d 1185, 1191 (Fed. Cir. 1990) (the "basic purpose of the statute" is to "determin{e} current margins as accurately as possible"). The allegiance to accuracy in the margin calculation applies even when Commerce is assigning adverse rates to uncooperative respondents under AFA. Commerce improperly selected the highest AFA rate for Jindal.

## V.    CONCLUSION

Commerce's actions in denying Jindal's extension request and applying AFA to Jindal constituted an abuse of discretion and were unsupported by substantial evidence. Accordingly, this Court should remand this case with instructions for Commerce to accept Jindal's questionnaire responses and to calculate a CVD rate for Jindal.

Respectfully submitted,

/s/Irene H. Chen
Irene H. Chen
VCL Law LLP
1945 Old Gallows Road, Suite 260
Vienna, VA 22182
Tel: (301) 760-7393
Fax: (301) 263-7700
Email: ichen@vcllegal.com

/s/Mark B. Lehnardt
Mark B. Lehnardt
Davis & Leiman
1012 Connecticut Ave., N.W., Ste. 1012
Washington, DC 20036
Tel: (202) 642-4850
Email:  mlehnardt@dltrade.com

Date: February 10, 2025              *Counsel to Plaintiff Jindal Poly Films Ltd.*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the guidelines set forth in the Standard Chambers Procedures. The brief contains 4730 words on numbered pages (that is, excluding only the Cover Page, the Table of Contents, and the Table of Authorities, the signature block, and the present certificate).

2. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.


Dated: February 10, 2025                    /s/ Irene H. Chen
                                            Irene H. Chen

                                            *Counsel to Plaintiff Jindal Poly Films Ltd.*

17