# THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

|  |  |
|---|---|
| **JINDAL POLY FILMS LIMITED.** | |
| **Plaintiff,** | |
| **v.** | Court No. 24-00053 |
| **UNITED STATES,** | |
| **Defendant,** | |
| **and** | |
| **DUPONT TEIJIN FILMS** | |
| **Defendant-Intervenor.** | |

## RULE 56.2 MOTION OF PLAINTIFF JINDAL POLY FILMS LTD., FOR JUDGMENT ON THE AGENCY RECORD

Irene H. Chen
VCL Law LLP
1945 Old Gallows Road, Suite 260
Vienna, VA 22182
Tel: (301) 760-7393
Fax: (301) 263-7700
Email: ichen@vcllegal.com

Mark B. Lehnardt
Davis & Leiman
1012 Connecticut Ave., N.W., Ste. 1012
Washington, DC 20036
Tel: (202) 642-4850
Email:  mlehnardt@dltrade.com

*Counsel to Plaintiff Jindal Poly Films Ltd.*

September  6, 2024

**TABLE OF CONTENTS**

STATEMENT PURSUANT TO USCIT R.56.2(c)(1) ................................................ 5

   I.   Administrative Determination To Be Reviewed ................................................ 5

   II.   Questions Presented ................................................ 5

JURISDICTION ................................................ 5

STATEMENT OF FACTS ................................................ 6

STANDARD OF REVIEW ................................................ 18

SUMMARY OF THE ARGUMENT ................................................ 19

ARGUMENT ................................................ 19

   I.   Commerce Abused Its Discretion When It Denied Jindal's Out-Of-Time Request For Extension Of Time Because It Failed To Consider The Context Of Jindal's Request ............ 19

   II.   Commerce Unlawfully Concluded That Jindal Failed To Cooperate To The Best Of Its Ability Because It ................................................ 26

   III.   Commerce Unlawfully Selected The Highest Program-Specific Rates Because It Did Not Conduct An Evaluation Of The Situation That Resulted In Applying AFA ................... 27

   IV.   The AFA Rate Assigned To Jindal Is Unlawfully Punitive ........................................ 30

CONCLUSION & PRAYER FOR RELIEF ................................................ 33

## TABLE OF AUTHORITIES

**Cases**

*Ajmal Steel Tubes & Pipes Industries LLC v. United States*, 2022 WL 15943670 (Ct. Intl. Trade
   2022) ................................................................................................................... 23
*Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334 (Ct. Intl. Trade 2014) .................... 23
*BMW of N. Am. LLC v. United States*, 926 F.3d 1291 (Fed. Cir. 2019) .................................... 27
*Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359 (Ct. of Int'l Trade 2019) .............. 17, 24
*Cambria Co. LLC v. United States*, 705 F. Supp. 3d 1369 (Ct. Int'l Trade 2024) ...................... 25
*Celik Halat v. Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363 (Ct. Int'l Trade 2022) ..... 19
*Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367 (Fed. Cir. 2012).... 30
*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) .................................. 16
*Daewoo Elecs. Co. v. Int'l Union of Elec. Tech., Salaried & Mach. Workers, AFL-CIO*, 6 F.3d
   1511 (Fed. Cir. 1993) ........................................................................................... 16
*Elkem Metals Co. v. United States*, 27 CIT 838, 276 F. Supp. 2d 1296 (2003) ......................... 28
*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027 (Fed. Cir.
   2000) ................................................................................................................... 29
*Fine Furniture (Shanghai) Ltd. v. United States*, 865 F.Supp.2d 1254 (Ct. Int'l Trade 2012) .... 21
*Fischer S.A. Commercio, Industria & Agricultura v. United States*, 700 F.Supp.2d 1364 (Ct. Int'l
   Trade 2010) ......................................................................................................... 21
*Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010) ...................... 15
*Grobest & I-Mei Industrial (Vietnam) Co. v. United States*, 815 F.Supp.2d 1342 (Ct. Int'l Trade
   2012) ................................................................................................................... 18
*Grupo Acerero S.A. de C.V. v. United States*, 698 F. Supp. 3d 1320 (Ct. Int'l Trade 2024) ........ 19
*Hubbell Power Sys., Inc. v. United States*, 2019 WL 6174713 (Ct. Int'l Trade 2019) ................ 27
*Hyundai Heavy Industries Co., Ltd. v. United States*, 393 F. Supp. 3d 1293 (Ct. Intl. Trade 2019)
   .......................................................................................................................... 25
*Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024) .................................................... 16
*Maverick Tube Corp. v. United States*, 857 F.3d 1353 (Fed. Cir. 2017) ................................... 25
*Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States*, 753 F.3d 1227 (Fed. Cir.
   2014) ................................................................................................................... 30
*Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333 (Fed. Cir. 2016) .................................. 25
*Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003) ...................................... 11
*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995) ....................................... 21
*Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, (Ct. Int'l Trade Feb.
   15, 2023) ............................................................................................................. 18
*POSCO v. United States*, 296 F. Supp. 3d 1320 (Ct. Int'l Trade 2018) ..................................... 27
*Pro-Team Coil Nail Enter., Inc. v. United States*, 419 F. Supp. 3d 1319 (Ct. Int'l Trade 2019).. 22
*Shandong Huarong Mach. Co. v. United States*, 13 CIT 1815 (2007) ...................................... 28
*Shanghai Tainai Bearing Co. v. United States*, 658 F. Supp. 3d 1269 (Ct. Int'l Trade 2023) ...... 29
*Star Fruits S.N.C v. United States*, 393 F.3d 1277 (Fed. Cir. 2005) .................................... 17, 24
*Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006) ....................................... 22
*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) ................................................. 15

## Statutes

19 U.S.C § 1677e(d)(3)(B) ........................................................................................... 27

19 U.S.C. § 1516a(a)(2)(A)(i)(II) .................................................................................. 2

19 U.S.C. § 1516a(b)(1)(B)(i) ..................................................................................... 14

19 U.S.C. § 1677e(b) ............................................................................................ 23, 27

19 U.S.C. § 1677e(d)(2) ........................................................................................ 10, 25

28 U.S.C. § 1581(c) ............................................................................................... 2, 14

## Rules

U.S.C.I.T. R. 3(a)-(b) .................................................................................................. 2

## Administrative Determinations

*Initiation of Antidumping and Countervailing Duty Administrative Review*, 87 Fed. Reg. 54463 (Dep't of Commerce Sept. 6, 2022) ............................................................... 5

*Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019*, 87 Fed. Reg. 5,464 (February 1, 2022) ................................................................ 30

*Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2012*, 80 Fed. Reg. 11,163 (March 2, 2015).... 31

*Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2013*, 81 Fed. Reg. 7,753 (February 16, 2016). 31

*Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2014*, 81 Fed. Reg. 89,056 (December 9, 2016) 31

*Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2015*, 83 Fed. Reg. 5,612 (February 8, 2018)... 31

*Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 10,789 (March 22, 2019)... 31

*Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 14,463 (March 12, 2020)... 30

*Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 26,700 (May 17, 2021)...... 30

*Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2020*, 87 Fed. Reg. 76,024 (December 12, 2022) ............................................................................................................................ 30

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2021*, 89 Fed. Reg. 5,490 (Dep't of Commerce Jan. 29, 2024) .. 4, 17

*Polyethylene Terephthalate Film, Sheet, and Strip From India: Preliminary Results of Countervailing Duty Administrative Review and Partial Rescission of Administrative Review; 2021*, 88 Fed. Reg. 50,834 (Dep't of Commerce Aug. 2, 2023)............................................. 12

Plaintiff Jindal Poly Films Ltd. ("Jindal") respectfully moves for Judgment on the Agency Record with respect to the final results issued by the U.S. Department of Commerce ("Commerce") in its administrative review of the countervailing duty order published in the *Federal Register* as *Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty* ("CVD") *Administrative Review; 2021*, 89 Fed. Reg. 5,490 (Dep't of Commerce, Jan. 29, 2024) ("*Final Results*") and accompanying Issues and Decision Memorandum (January 23, 2024) ("*Final I&D Memo*").

Jinal respectfully moves, for the reasons explained below, for this Court to hold that the contested portions of the *Final Results* are not supported by substantial evidence or otherwise in accordance with law. Jindal further moves for the Court to remand this matter to the U.S. Department of Commerce for disposition consistent with the order and opinion of the Court.

## INTRODUCTION

In its *Final Results*, Commerce punished Jindal for being unrepresented with a key employee on medical leave. That is, with Jindal unrepresented during the initial weeks of its selection as a mandatory respondent, Commerce resorted to adverse facts available ("AFA") to determine Jindal's CVD duty based entirely upon Jindal having missed a filing deadline, despite Jindal's request for additional time to respond, pointing to the extraordinary circumstances that the company official in charge of Jindal's response was on medical due to severe illness, and despite Jindal's overall cooperation and attempts to submit the filing as soon as the company official on medical leave could review the filing requirements. Not only is Commerce's resort to AFA unlawful, the rate Commerce applied is unlawful as contrary to the statute and unduly punitive.

**STATEMENT PURSUANT TO USCIT R.56.2(c)(1)**

## I.    Administrative Determination To Be Reviewed

Jindal contests aspects of Commerce's final determination in the 2021 countervailing duty administrative review of polyethylene terephthalate film, sheet, and strip ("PET Film") from India. *See* Polyethylene Terephthalate Film, Sheet, and Strip From India: Final Results of Countervailing Duty Administrative Review; 2021, 89 Fed. Reg. 5,490 (January 29, 2024), and accompanying Issues & Decisions Memorandum.

## II.    Questions Presented

**Issue 1**:    Whether Commerce act unreasonably when it denied Jindal's out-of-time request for extension of time given that Jindal was unrepresented, key employees with Jindal's institutional knowledge was on medical leave will severe illness, there was ambiguous language setting deadlines, and Jindal acted quickly when it understood that it misunderstood the deadline.

**Issue 2:**    Whether Commerce improperly found that Jindal failed to cooperate to the best of its ability when its analysis was tainted with reliance on incorrect facts and failed to recognize Jindal's efforts, and the amount of time remaining in the review.

**Issue 3:**    Whether Commerce unlawfully selected the highest program-specific rates because it did not conduct the required evaluation of the situation that resulted in applying AFA

## JURISDICTION

This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II). This action contests legal and factual conclusions set forth in the *Final Results*. Jindal timely filed the summons within 30 days of publication of the final results, and timely filed the complaint within 30 days of the filing of the summons. *See* U.S.C.I.T. R. 3(a)-(b); ECF 1, Summons; ECF 5, Complaint. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

**STATEMENT OF FACTS**

Commerce initiated an administrative review of Jindal and seven other companies on September 6, 2022, based on requests filed by Petitioners and interested parties. *See* PR9, *Initiation of Antidumping and Countervailing Duty Administrative Review*, 87 Fed. Reg. 54463 (Dep't of Commerce Sept. 6, 2022) ("*Initiation*"); PR3, *SRF Limited Request for Review*; PR4, *Polyplex Request for Review*; PR5, *Pet'r Request for Review*.  Representatives of Polyplex and Petitioners entered appearances on the record on July 27 and September 22, 2022, respectively. *See* PR2, *SRF Entry of Appearance*; PR10, *Petrs' Entry of Appearance*.  Almost two months later, on October 28, 2022, Commerce selected SRF Limited as the sole mandatory respondent because it accounted for significant exports of PET Film from India to the United States during the calendar-year 2021 period of review ("POR"). PR13/CR3, *Respondent Selection Mem.*, at 5-6.

Commerce issued the questionnaire to the Government of India ("GOI") a few days later, on November 3, 2022, serving the GOI at its Washington, D.C., embassy.  PR14-15, *Questionnaire*.  Commerce tasked the GOI with "forwarding copies of {the} cover letter and questionnaire to the respondent company." *Id.* at 1.  The November 3, 2022 questionnaire set a December 12, 2022 deadline to responde to "SECTIONS II and III," and a November 17, 2022 deadline for "SECTION III IDENTIFYING AFFILIATED COMPANIES.  PR15, *Questionnaire* at 1.  SRF entered its appearance on November 15, 2022, and immediately requested a 10-day extension of time, to November 27, 2022, to file the "affiliate response."  PR16, *SRF EOT Request*; PR17, *SRF Entry of Appearance*.  Commerce granted the full 10-day extension on the same day it was requested.  *See* PR18, *SRF EOT Grant*.   SRF filed its affiliated response on November 26, 2022.  *See* PR19/CR4-5, *Affiliated Parties Response*,

SRF abruptly stopped participating in the administrative review.  On December 2 and 5, 2022, on the 87th and 90th days after the publication of the *Initiation*, PolyPlex, SRF Limited, and Petitioners withdrew their requests for administrative review of all exporters except for Jindal.  *See* 9 C.F.R. § 351.213(d)(1) (requiring Commerce to rescind a review if all requests for review of a company are withdrawn within 90 days after publication of the notice of initiation); PR20, *Polyplex Withdrawal of Request for Review*; PR24, *SRF Withdrawal of Request for Review*; PR25, *Petitioner Partial Withdrawal of Request for Review.*  Petitioners highlighted that they had not withdrawn their request for review of Jindal.  PR25, *Petitioner Partial Withdrawal of Request for Review.*  Consequently, 97 days after publication of the *Initiation*, Commerce stated its intent to rescind the review of all companies but Jindal, acknowledging that Jindal was the sole remaining manufacturer or exporter of PET Film from India remaining in the review, and – with Jindal accounting for a small amount of total exports of PET Film from India to the United States – stated that Jindal would be a mandatory respondent.  *See* PR27, *Intent to Rescind Review, in Part, and Company Subject to Individual Examination*, at 2.  On December 12, 2022, Commerce re-issued the questionnaire to the Government of India ("GOI").  *See* PR28, *Questionnaire Cover Letter*.

At this point in the proceeding, Jindal had not requested the review of itself, was not represented by counsel or any other representative, and had not submitted any information or argument to Commerce or otherwise participated in the review.  *See* ECF 18-2, *Public Administrative Record Index*.  Commerce did not attempt to send the questionnaire to Jindal directly, but in the December 12, 2022 reissuance of the questionnaire, tasked the Government of India with "forwarding copies of this cover letter and questionnaire to the respondent company."

*See* PR28*, Questionnaire Cover Letter*.  Commerce did not verify the delivery date of the questionnaire to Jindal.  *See* ECF 18-2, *Public Administrative Record Index*.

The deadline for submitting the "RESPONSE to SECTIONS II and III" of the questionnaire ("initial questionnaire response" or "IQR") was set as January 18, 2022, *id.*, about 5 months after publication of the initiation, and 7 months before a fully extended preliminary results.  *See* PR29, *Questionnaire* at 1; 19 U.S.C. § 1675(a)(3)(A) (permitting extension of the preliminary results up to one year after the date the initiation of an administrative review is published).  Listed below the IQR response deadline, Commerce listed another deadline for the "RESPONSE to SECTION III IDENTIFYING AFFILIATED COMPANIES" ("Affiliated Parties Response" or "AQR") for Monday, December 26, 2022, *see* PR29, *Questionnaire*, the day after Christmas when federal agencies were closed and just a few days before the New Year's holiday.  PR29, *Questionnaire*, at 1.  The deadline was actually Tuesday, December 27, 2022.  *See* PR42, *Denial of EOT Request*, at 1 & nn.1-2 (clarifying the deadline for the submission).  The deadlines are set out on the first page of the questionnaire, as follows:

**POLYETHYLENE TEREPHTHALATE FILM, SHEET AND STRIP FROM INDIA**
**C-533-825**

| | |
|---|---|
| **PERIOD OF REVIEW:** | January 1, 2021, through December 31, 2021 |
| **DUE DATE for RESPONSE to SECTIONS II and III:** | **January 18, 2022** |
| **DUE DATE for RESPONSE to SECTION III IDENTIFYING AFFILIATED COMPANIES:** | **December 26, 2022** |
| **OFFICIALS IN CHARGE:** | **Michael Romani**<br>International Trade Compliance Analyst<br>(202) 482-0198<br>MICHAEL.ROMANI@TRADE.GOV<br>(202) 482-6187<br>KONRAD.PTASZYNSKI@TRADE.<br>**Konrad Ptaszynski**<br>International Trade Compliance Analyst<br>GOV |

PR29, *Questionnaire*, at 1. The first page of the questionnaire thus sets forth two deadlines for Section III of the questionnaire: January 18, 202{3}, for "Sections II and III," and December 26, 2022, for "Section III identifying affiliation companies." *Id.* The "January 18, 2022" deadline obviously should have been 2023, but more importantly, it does not specify whether the questionnaire response identifying affiliated companies is also due on January 18, 2023, or whether the respondent can file this information together with the response to "Sections II and III." *Id.*

Three days after the December 27, 2022 AQR deadline, in the early morning of Sunday, December 30, 2022, the Indian consultancy that had been representing the GOI since December 3, 2022, YKG and Associates ("YKG"), entered its appearance also on behalf of Jindal. *See* PR21, *Entry of Appearance for GOI*; PR30, *Entry of Appearance for Jindal*. The next morning, on December 31, 2022 – just more than 7 months before Commerce published the *Preliminary Results* on August 2, 2023, and almost 13 months before the January 29, 2023 publication of the

*Final Results* – YKG filed a letter requesting an extension of the AQR deadline by 15 days, until

January 10, 2023. YKG explained extraordinary circumstances related to Jindal missing the

AQR deadline.  PR33, *Jindal Request for Extension of Time*.

First, Jindal had not been involved in the prior two administrative reviews (the 2019

review and the 2020 review) and had not been represented by counsel earlier in the 2021 review;

thus, Jindal had not been represented for a few years.  *Id.*  Second, the institutional knowledge

with the individual within Jindal responsible for the company's response in trade investigations

was unavailable, on medical leave with a severe illness, and thus there was a gap in

understanding at the company.  *Id.*

Others at the company had not understood ("misconstrued") that the AQR was separately

due at a different (and earlier) date than the January 18, 2023 deadline for the company's IQR:

"now it has come to light that 'Section III Identifying Affiliated Companies' affiliated party

information *is also required* to file by the respondent."  *Id.* (emphasis added).  That is, the

combination of no representative and no available institutional knowledge within the company

because of severe illness and medical leave meant that those uninformed remaining at Jindal read

the separate deadlines for "Section III" and "Section III Identifying Affiliated Companies" to

mean that it could respond to Section III Identifying Affiliated Companies by December 26,

2022, or to all of Section III (including parts identifying affiliated companies) by January 18,

2023.  *Id.*  Jindal affirmed that it would "ensure to put its best efforts in filing response within

time," as its track record in other proceedings so testified, and that it had "been working

diligently to collect and review the required information" required for its responses in the 2021

review.  *Id.*

Commerce did not immediately act on Jindal's request, so Jindal filed its AQR on January 7, 2023 -- just under 7 months before Commerce published the Preliminary Results on August 2, 2023, and almost 13 months before the January 29, 2023 publication of the Final Results. *See* PR35/CR6, *Jindal AQR* (rejected). PR46, *Rejection Memo*. On January 11, 2023, Jindal requested an extension until February 17, 2023, to file the IQR. PR37, *Jindal IQR Extension Request*. A week later, however, on January 18, 2023, Commerce suspended the deadlines for all further submissions. *See* PR39, *Suspension of Deadline*. (Even though Jindal submitted its IQR anyway on February 17, 2023, *see* PR47-65/CR7-68, *Jindal IQR,* Commerce also rejected the IQR and removed it from the record. *See* PR71, *IQR Rejection Letter*; PR72, *IQR Rejection Memo*.)

On January 27, 2023, Commerce denied Jindal's December 31, 2022, AQR extension request for four reasons. PR42, *Denial of Extension Request*. First, although Jindal had filed its extension request four days after the December 27, 2022 deadline, Commerce stated that "Jindal did not file a request to extend the deadline until a week later, on January 3, 2023." *Id.* at 2. Second, Commerce stated that "Jindal does not claim that there was a medical emergency but rather that the medical leave of an employee caused a miscommunication that there were two separate deadlines." *Id.*, at 2. But Jindal had pointed to its being unrepresented by outside counsel, along with "the communication gap *and also* because the concerned person of the respondent company dealing with the subject matter was on medical leave for being suffered from severe illness, it was inadvertently misconstrued that the respondent has to file only questionnaire response for which the deadline is January 18, 2023" as the reasons for its inability to timely request an extension of time. *See* PR33, *Jindal Request for Extension of Time* (emphasis added). In other words, it was precisely because of the medical emergency and loss of

institutional knowledge that prevented it from knowing it needed to respond sooner.  *Compare* PR33, *Jindal AQR Extension Request*, *with* PR42, *Denial of Extension Request*.  Third, despite Jindal being unrepresented until December 28, 2022, Commerce claimed that Jindal's eventual representative (YKG) had "accessed the document multiple times before the deadline," on December 12 – 15, 2022.  *See* PR42, *Denial of Extension Request*, at 2; PR32, *Jindal Appointment of YKG*.  Commerce did not acknowledge that YKG was the representative of the GOI since December 5, 2022, or that Commerce had tasked the GOI with delivering the questionnaire to Jindal.  *See* PR21, *Entry of Appearance for GOI*; PR30, *Entry of Appearance for Jindal*; PR32, *Jindal Appointment of YKG;* PR28, *Questionnaire Cover Letter*.  Fourth, without acknowledging the severe illness and medical leave, Jindal's unrepresented status at the time, or the fact that Commerce did not send the questionnaire to Jindal, Commerce pointed to Jindal's prior participation as a {represented} mandatory respondent, stating that Jindal "should be aware of how Commerce structures its deadlines for the affiliation response."  PR42, *Denial of Extension Request*, at 2.  Commerce concluded that "Jindal did not sufficiently show that there was an extraordinary circumstance," *id.*, and removed Jindal's AQR from the record.  PR46, *Rejection Memo*.

The GOI Embassy requested that Commerce reconsider its rejection of Jindal's AQR, highlighting the "unforeseeable circumstance" of the serious medical condition that prevented the Company from learning about the deadlines:  that it was "{f}or this reason alone."  PR66, *Memo to File: GOI Embassy Letter*, at 3.

Commerce extended the deadline for the preliminary results twice, to July 28, 2023, explaining first that it needed "additional time to collect, review and analyze questionnaire responses and issue supplemental questionnaires," and second that it needed "additional time to

analyze the *Government of India's questionnaire response* and prepare a supplemental

questionnaire."  *See* PR73, *First Extension of Preliminary Results*; PR78, *Second Extension of*

*Preliminary Results*.  With these two extensions, Jindal's January 7, 2023 attempt to submit its

AQR was nearly seven months before the deadline for the preliminary results, and the February

17, 2023 attempt to submit its IQR was more than five months before that deadline.

    Commerce published the preliminary results on August 2, 2023.  *See* PR90, *Polyethylene*

*Terephthalate Film, Sheet, and Strip From India: Preliminary Results of Countervailing Duty*

*Administrative Review and Partial Rescission of Administrative Review; 2021*, 88 Fed. Reg.

50,834 (Dep't of Commerce Aug. 2, 2023) ("*Preliminary Results*"); PR89 *Decision*

*Memorandum for the Preliminary Results and Partial Rescission of the Countervailing Duty*

*Administrative Review: Polyethylene Terephthalate Film, Sheet, and Strip; 2021* ("*Prelim I&D*

*Memo*").

    In the *Preliminary Results*, Commerce reiterated the decision to reject Jindal's out-of-

time extension request because it was untimely and noted that Jindal submitted its AQR after the

deadline.  PR89, *Prelim I&D Memo* at 5-6.  Commerce observed that Jindal did not file its AQR

on the December 26, 2022 deadline, and stated that Commerce must conduct the review within

statutory deadlines.  PR89, *Prelim I&D Memo* at 5.  Commerce also highlighted that it had

earlier stated that if Jindal failed to submit a response or an extension request by the deadline,

Commerce "*may* conclude that the government or the respondent company {has} decided not to

cooperate in this proceeding."  *Id.*, at 6.  As a result, Commerce decided that Jindal's failure to

submit the AQR by the deadline significantly impeded the investigation by preventing

Commerce from determining cross-ownership.  *Id.*  Commer explained that by not timely

responding to the AQR, "Jindal did not 'do the maximum it is able to do,' and, there for did not

cooperate to the best of its ability," thus warranting the application of adverse facts available ("AFA") in the determination of Jindal's program-specific CVD duty rates. PR89, *Prelim I&D Memo* at 6 (*quoting Nippon Steel Corp. v. United States*, 337 F.3d 1373, 182-83 (Fed. Cir. 2003)). Commerce did not analyze how Jindal's failure to file by the deadline, despite its diligent attempts to remedy that failure, compelled Commerce to find that Jindal decided not to cooperate in the proceeding, even though Commerce had stated that such a failure only "*may*" lead it to conclude that "the respondent company {has} decided not to cooperate." *See* PR89, *Prelim I&D Memo* at 6.

Commerce explained that its selection of AFA rates was guided by 19 U.S.C. § 1677e(d)(2), permitting use of the highest prior subsidy rate, "based on the evaluation by the administering authority of the situation that resulted in the administering authority using an adverse inference in selecting among facts otherwise available. *Id.*, at 8 (*quoting* 19 U.S.C. § 1677e(d)(2)). Commerce acknowledged that there is no guiding legislative history for this statutory provision. *Id.* Commerce's "evaluation … of the situation" included three statements: (1) "the record does not suggest we should apply a rate other than the highest rate envisioned under the appropriate step of the {AFA} hierarchy," (2) "Jindal failed to respond to the affiliated companies' portion of the initial CVD questionnaire and, as such, it failed to cooperate to the best of its ability," and (3) that "the record does not support the application of an alternative rate." *Id.* at 8. Commerce explained that, on the basis of AFA, it found that Jindal participated in all 27 alleged subsidy programs, and selected the highest calculated rate of the same or similar program for each that had been calculated in prior proceedings under the CVD order on *PET Film from India* (excepting programs the GOI demonstrated were not used or were terminated). *Id.* at 9-14. The individual program AFA rates summed to 116.96%. *Id.* at 14. Commerce did

not corroborate the AFA rates, explaining that they were calculated from prior segments under the same order. *Id.* at 10.

Jindal filed a case brief, arguing that Commerce was not justified resorting to AFA, and its selection of AFA rates was an abuse of discretion. *See* PR92/CR75, *Jindal Case Br.* Among other things, Jindal argued that Jindal acted to the best of its ability in responding, with the one mistake due to being unrepresented with relevant inhouse staff out on medical leave. *See id.*, at 6-12. Jindal also argued that the rejection and removal of Jindal's AQR was an abuse ("arbitrary use") of Commerce's discretionary powers. *Id.*, at 6, 13-18. Jindal also argued that Commerce unreasonably countervailed 27 programs with a punitive summed rate of 116.96%. *Id.* Finally, Jindal argued that Commerce's rejection of the AQR violated U.S. obligations under Article 12.7 of the SCM Agreement. *Id.*, at 7, 16-18. Jindal – whose representative may not have been sufficiently steeped in U.S. CVD procedural law – filed a surreply brief that was rejected because surreply briefs are not allowed under Commerce's rules. *See* PR101, *Rejection of Surrebuttal Br.*, at 1.

Commerce extended the deadline for the final results by nearly two months, until January 25, 2024. *See* PR103, *Extension of Final Results.* Commerce published the *Final Results* on January 29, 2024. *See* PR109, *Final Results*; PR108, *Final I&D Memo.* Thus, Jindal's EOT request to file its AQR, and its attempt to promptly file its AQR after missing the AQR deadline were 394 and 387 days – or more than a full year – before the *Final Results.* *Compare* PR33, *Jindal Request for Extension of Time, and* PR35/CR6, *Jindal AQR* (rejected)*, with* PR109, *Final Results.*

In the *Final Results*, Commerce "made no changes to {its} AFA determination from the *Preliminary Results* for the final results of review." *See* PR108, *Final I&D Memo*, at 4.

Commerce rejected Jindal's arguments, declining to reconsider its preliminary determination. *See* PR108, *Final I&D Memo*. Regarding its decision to resort to AFA, Commerce stated, "As explained in the Preliminary Results, 'Commerce must conduct this review in accordance with statutory and regulatory deadlines,' and by failing to provide required information by the specified deadline, Jindal significantly impeded this proceeding." *Id.* at 6 (*quoting* PR89, *Prelim I&D Memo* at 5-6). Commerce chided Jindal for claiming that it was unrepresented until YGK entered its appearance on December 30, 2022, noting that YGK had viewed the questionnaire several times, and stating, that it found "Jindal's arguments unavailing." *Id.* Commerce did not recognize or distinguish, as part of its analysis, that YGK represented the GOI beginning December 3, 2022, *see* PR21, *YGK Entry of Appearance on behalf of GOI*, and accessed the questionnaire as GOI's representative on Monday, December 12, 2022, the day the questionnaire was issued to the GOI, the next day, Tuesday, December 13, 2022, and two days later, on Thursday, December 15, 2022 – more than two weeks before YGK's December 30, 2022 entry of appearance on behalf of Jindal, and Jindal's December 31, 2022 extension request. *Compare id.* at 6, *with* PR42, *AQR EOT Rejection Letter*, at 2, PR30, *YKG Entry of Appearance for Jindal*, *and* PR33, *AQR EOT Request*.

Commerce reiterated in the *Final Results* that it had "considered the facts surrounding Jindal's failure to cooperate," and continued to find that Jindal had failed to act to the best of its ability. PR108, *Final I&D Memo*, at 6-7. Commerce rejected Jindal's justification that it misunderstood the deadline, stating that "the initial questionnaire clearly indicated that responses to the affiliated companies' questionnaire was due on December 26, 2022," and observing that "Jindal took no steps to seek clarification of the deadlines." *Id.*, at 7. Commerce claims that "Jindal acknowledges that it failed to monitor the questionnaire deadlines itself or appoint a

representative with the authority to do so on its behalf until after the affiliated companies'
questionnaire response was due." *Id.* But Commerce did not acknowledge that the deadline for
"Section II and III:  January 18, 2023" was listed first, that this deadline did not indicate whether
it was for all of Section III or Section III minus affiliated party questions, or that the second
reference to Section III, "Section III Identifying Affiliated Companies," may have been
confusing to an unrepresented party with its institutional memory out on medical leave for severe
illness, as Jindal had asserted.  *See* PR33, *AQR EOT Request*, at 1; PR92, *Jindal Case Br.*, at 5,
8-9.

Commerce also asserts that "Jindal does not claim the extraordinary circumstances
prevented it from filing its {AQR} prior to the submission deadline," PR108, *Final I&D Memo*,
even though this is exactly what Jindal argued – albeit not using the words "extraordinary
circumstances."  *See* PR92/CR75, *Jindal Case Br.*, at 5-7, 10-11.

Regarding the AFA rate, Commerce stated that it believed that each of the individual
program-specific rates were reasonable and "there is no evidence that the rate for any subsidy
program is based on aberrational data or is otherwise unsupported."  PR108, *Final I&D Memo*, at
15.  Commerce further stated that "each of the AFA program rates assigned in the *Preliminary
Results*, and for these final results, are based on identical program rates calculated by Commerce
in prior segments of this proceeding in accordance with step one of Commerce's hierarchy."  *Id.*
Commerce did not provide any analysis of whether the sum of program specific rates – 116.54%
-- is reasonable in light of the commercial reality of the industry.

Thus, in the *Final Results*, Commerce continued to find that Jindal was uncooperative
and continued to resort to total AFA, leaving the 116.96% preliminary CVD duty rate
unchanged.  *See* PR109, *Final Results*, 89 Fed. Reg. at 5,491.  Jindal appeals.

## STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c). When reviewing the final results of CVD reviews, this Court shall hold unlawful and remand any administrative determination by Commerce that is "not supported by substantial evidence or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). This Court shall hold unlawful and remand any administrative determination by Commerce that is "unsupported by substantial evidence on the record." *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). This Court "reviews the record as a whole, including any evidence that fairly detracts from the substantiality of the evidence," *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (internal quotation marks and citation omitted), and determines "whether the evidence and reasonable inferences from the record support the {agency's} findings." *Daewoo Elecs. Co. v. Int'l Union of Elec. Tech., Salaried & Mach. Workers, AFL-CIO*, 6 F.3d 1511, 1520 (Fed. Cir. 1993) (international quotation marks and citation omitted).

For issues requiring construction of statutory provisions, the Supreme Court's holding *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024), overturning *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), directs that this Court, not Commerce, decides what the law means and how it applies. Rather than deferring to agency interpretations of arguably ambiguous statutes, this Court must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright*, 144 S. Ct. at 2273. No longer may a court accept an agency's "reasonable" or "permissible" interpretation of the law where it is not the interpretation that the court concludes is the relevant statute's "best meaning."

*Id*. at 2266.  To the extent ambiguity may be found in the law, "agencies have no special competence in resolving statutory ambiguities."  *Id.* at 2266.

## SUMMARY OF THE ARGUMENT

Commerce abused its discretion when it denied Jindal's out-of-time request for an extension of time to submit its AQR.  Further, after Commerce denied the extension-of-time request, Commerce unlawfully concluded that Jindal failed to cooperate to the best of its ability when it did not file the AQR by the original deadline.  To the extent, however, that the Court believes Commerce acted reasonably, Commerce unlawfully selected the highest program-specific rates because it did not include an evaluation of the situation that results in applying AFA.  Further, Commerce's combined AFA selections do not reflect the commercial reality of the industry.  Accordingly, this Court must reject Commerce's *Final Results* and remand this case for reconsideration by Commerce.

## ARGUMENT

I.    **Commerce Abused Its Discretion When It Denied Jindal's Out-Of-Time Request For Extension Of Time Because It Failed To Consider The Context Of Jindal's Request**

Commerce abused its discretion when it denied Jindal's out-of-time request for extension of time because Commerce's analysis includes factual errors and ignores the full context of Jindal's request.  Commerce incorrectly described the timing of Jindal's filing, misunderstood Jindal's argument regarding extraordinary circumstances, failed to recognize ambiguities in the questionnaire, incorrectly claimed Jindal's counsel accessed the questionnaire before the deadline, ignored Jindal's unrepresented status, and didn't consider how much time was left in the review.  Thus, this Court should remand for Commerce to accept Jindal's AQR and resume the administrative review.

Commerce abuses its discretion when it issues a decision that "represents an unreasonable judgement in weighing relevant factors." *Bosun Tools Co. v. United States*, 405 F. Supp. 3d 1359, 1364-65 (Ct. of Int'l Trade 2019) (citing *Star Fruits S.N.C v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).  When examining whether Commerce abused its discretion, this Court also weighs Commerce's interest in ensuring finality, the burden of incorporating the information, and whether the information will increase the accuracy of the calculated margins. *Bosun Tools*, 405 F. Supp. 3d at 1365 (quoting *Grobest & I-Mei Industrial (Vietnam) Co. v. United States*, 815 F.Supp.2d 1342, 1365-67 (Ct. Int'l Trade 2012).

Commerce's errors in describing the relevant facts demonstrate that it made an unreasonable judgement in weighing relevant factors.  First, Commerce incorrectly described the timing of Jindal's filing, stating that it waited for a week after the deadline before filing its request for extension of time.  The deadline for Jindal's AQR was December 27, 2022.  *See* PR42, *Denial of EOT Request*, at 1 & nn.1-2.  Jindal filed its extension request four days later, on December 31, 2022 – the day after its representative entered its appearance.  PR33, *Jindal Request for Extension of Time*.

Commerce misunderstood Jindal's argument regarding extraordinary circumstances and failed to recognize ambiguities in the questionnaire.  Commerce claimed that Jindal made no argument about extraordinary circumstances, PR108, *Final I&D Memo*, at 12, even though this is exactly what Jindal argued – albeit not using the words "extraordinary circumstances."  *See* PR92/CR75, *Jindal Case Br.*, at 5-7, 10-11.  Jindal explained that it was unrepresented and the key employee with its institutional knowledge was on medical leave.  *Id.* The "mistake" or "misconstruction" Jindal discussed was based upon the confusing deadlines listed in the questionnaire:  there are two deadlines for Section III, *see* PR29, *Questionnaire*, at 1, which to an

untrained reader may appear to present options. The first Section III deadline of January 18, 2023, was typed incorrectly by Commerce as "January 18, 2022," which to the untrained eye, falls before the Section III affiliation questionnaire deadline of "December 26, 2022." *Id.* Commerce's contributing lack of clarity is an additional factor Commerce should have considered. *See Oman Fasteners, LLC v. United States*, No. 22-00348, 2023 WL 2233642, at *2, *6-*8 (Ct. Int'l Trade Feb. 15, 2023) (remanding because, in part, the ACCESS filing system's performance contributed to the late filing).

The key Jindal employee out on medical leave was part of the extraordinary circumstances. This court has remanded Commerce's refusal to accept late submissions when medical issues have been part of the extraordinary circumstances, and should here as well. *See Grupo Acerero S.A. de C.V. v. United States*, 698 F. Supp. 3d 1320, 1332 (Ct. Int'l Trade 2024) (Commerce abused its discretion rejecting an EOT request when key personnel died and Commerce granted EOTs later in the review to another respondent). *Celik Halat v. Tel Sanayi A.S. v. United States*, 557 F. Supp. 3d 1363 (Ct. Int'l Trade 2022) (Commerce abused its discretion rejecting a late filing when the respondent's representative was recovering from knee surgery and the key employee of the respondent was on sick leave).

The justification Jindal explained – unrepresented with key personnel out on sick leave – has certainly sustained timely EOT requests in the past. *See, e.g., Certain Cut-to-Length Carbon-Quality Plate from Korea* (C-580-837) (granting an extension to file the IQR based upon Counsel recovering from Covid-19) (Barcode 4607588-01 & Barcode 4607837-01); *Phosphate Fertilizers from the Russian Federation* (C-821-825) (granting extension to file rebuttal brief when counsel was dealing with an emergency medical issue) (Barcode 4603597-01 & Barcode 4603681-01); *Certain Hardwood Plywood Products from the People's Republic of China* (C-

570-052) (granting extension when counsel's child had medical emergency) (Barcode 4612641-01 & Barcode 4612655-01); *Wood Mouldings and Millwork Products from the People's Republic of China* (C-570-118) (company's only accountant hospitalized) (Barcode 4589896-01); *Glycine from India* (A-533-883) (only "concerned" company employee on emergency medical leave for three days and returned to hometown) (Barcode 4569523-01 & Barcode 4570941-01); *Aluminum Extrusions from Colombia (*A-301-806) ("acute illness" of U.S. counsel's child requiring emergency room visit (Barcode 4538291-01 & Barcode 4538477-01); *Certain Corrosion Inhibitors from the People's Republic of China* (A-570-122) (company's in-house counsel and Chinese counsel tested positive with COVID-19) (Barcode 4321884-01 & Barcode 4322046-01); *Circular Welded Carbon Steel Pipes and Tubes from Turkey* (A-489-501) (outside accountant and programing consultant dealing with family medical emergency) (Barcode 4312086-01& Barcode 4312198-01).

Commerce has also granted out-of-time EOTs under similar circumstances to Jindal's here. *See Floor-Standing, Metal-Top Ironing Tables and Certain Parts Thereof From the People's Republic of China* (A-570-888) (granting out-of-time EOT filed one day after the original deadline due to U.S. counsel's family medical emergency and subsequent death in the family) (Barcode 4323551-01 & Barcode 4327624-01).

Commerce also incorrectly claimed Jindal's representative accessed the questionnaire shortly after it was issued, then chided Jindal for claiming it was not represented at the time the representative accessed the questionnaire. *See* PR108, *Final I&D Memo*, at 6; PR42, *AQR EOT Rejection*. Commerce did not recognize or distinguish, as part of its analysis, that YGK represented the GOI beginning December 3, 2022, *see* PR21, *YGK Entry of Appearance on behalf of GOI*, and accessed the questionnaire – which was issued to the GOI – as GOI's

representative on Monday, December 12, 2022, the day the questionnaire was issued to the GOI, the next day, Tuesday, December 13, 2022, and two days later, on Thursday, December 15, 2022 – more than two weeks before YGK's December 30, 2022 entry of appearance on behalf of Jindal, and Jindal's December 31, 2022 extension request.  *Compare id.* at 6, *with* PR42, *AQR EOT Rejection Letter*, at 2, PR30, *YKG Entry of Appearance for Jindal*, *and* PR33, *AQR EOT Request*.  Commerce incorrectly focused on YKG representing Jindal in the review, and ignored Jindal's unrepresented status when Commerce issued the second questionnaire.

Finally, Commerce ignored how much time was left in the review.  Jindal's EOT request for its AQR, and its attempt to promptly file its AQR after missing the AQR deadline were 7 and 5 months, respectively, before the *Preliminary Results*, and 394 and 387 days – or more than a full year – before the *Final Results*.  *Compare* PR33, *Jindal Request for Extension of Time, and* PR35/CR6, *Jindal AQR* (rejected)*, with* PR90, *Preliminary Results, and* PR109, *Final Results.* At such times, considerations for finality are at their lowest and the burden on Commerce to accept the filing is at a low.  *See Fine Furniture (Shanghai) Ltd. v. United States*, 865 F.Supp.2d 1254, 1267 (Ct. Int'l Trade 2012) (holding that when considering whether Commerce's rejection of untimely submission amounts to an abuse of discretion, the court weighs the burden of accepting late submissions and the need for finality) (citing *Grobest*, 815 F.Supp.2d at 1365; *Fischer S.A. Commercio, Industria & Agricultura v. United States*, 700 F.Supp.2d 1364, 1375-77 (Ct. Int'l Trade 2010);  *see also NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995) (holding that preliminary determinations are, by their nature, "subject to change" and the tension between finality and correctness did not exist during the preliminary determination stage); *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006) (explaining that the Federal Circuit had not prevented correction of errors during the preliminary stage, and the

balance between accuracy and finality was only appliable during the final result stage); *Pro-Team Coil Nail Enter., Inc. v. United States*, 419 F. Supp. 3d 1319, 1332 (Ct. Int'l Trade 2019) (finality concerns not implicated when the respondent failed to timely file a quantity and value submission before the preliminary results and almost eight months before the final result).

Commerce's observance that it has to conduct the review according to statutory deadlines can only be seen as a throw-away line because the deadline for the preliminary results was 7 months before the *Preliminary Results*, and more than a year – almost 13 months – before the *Final Results*. PR108, *Final I&D Memo,* at 6 (*quoting* PR89, *Prelim I&D Memo* at 5-6). Further, Commerce had granted the initial mandatory respondent, SRF, the full 10-day extension of time it requested when it expressed the need for additional time. *See* PR16, *SRF AQR EOT Request*; PR18, *DOC Grant of SRF AQR EOT Request.*

Prior cases have held that filing (or requesting an out-of-time EOT to file) after the deadline is not always fatal to the respondent – a careful analysis of the situation is required. There are several cases where this Court has rejected Commerce's decision to apply AFA for deadlines that were missed by a day or less. *See Oman Fasteners,* 2023 WL 2233642, at *2, *6-*8 (remanding a finding of total AFA for a filing completed 16 minutes after the 5 p.m. deadline, where Commerce disregarded its "policy of leniency" and the ACCESS filing system's performance contributed to the late filing); *Ajmal Steel Tubes & Pipes Industries LLC v. United States*, 2022 WL 15943670, at *4 (Ct. Intl. Trade 2022) (holding that Commerce abused its discretion when tolling the deadline for all administrative reviews due to the COVID-19 pandemic but still rejecting the respondent's filing filed more than an hour after the deadline); *Artisan Mfg. Corp. v. United States*, 978 F. Supp. 2d 1334, 1347 (Ct. Intl. Trade 2014) (Commerce abused its discretion not accepting Q&V response filed one business day after the

deadline because accepting the submission would not "seriously jeopardize the integrity of the record"); *Bosun Tools*, 405 F. Supp. 3d at 1364-66 (Commerce abused its discretion not accepting supplemental questionnaire response not completely filed until after 5:00 p.m. deadline because the delay had no prejudicial effect and rejecting the submission undermined "the accuracy of the dumping margins calculated in this case");

 This Court has even held that Commerce abused its discretion applying total AFA to a respondent that filed a separate rate certification 95 days after the deadline, where the circumstances were such that there was minimal prejudice or inconvenience. *Grobest*, 36 CIT 98. In *Grobest*, this Court found that Commerce abused its discretion because Commerce had rejected the 95-day late filing solely for its untimeliness without considering the submission was still early in the process – 7 months before the preliminary results were due – and the respondent was diligent in solving its mistake. *Id.* at 121-23, 125. Whether a filing or a few minutes late or a few months late, or whether the filing is one of the first responses to Commerce's information requests (like a separate rate certification) or a later supplemental questionnaire response, Commerce is required to evaluate the circumstances of the late filing and the respondent's diligence in remedying the late filing.

 Similar to *Grobest*, Commerce failed to consider the timing of Jindal's filing in the context of the review, Jindal's diligence attempting to remedy the missed deadline: Commerce failed to evaluate considerations of accuracy and finality. Commerce abused its discretion when it assigned Jindal the AFA rate due to Jindal's filing 5-7 months before the preliminary determination.

 In circumstances such as these, with considerations for finality at their nadir, with minimal burden on Commerce to accept the AQR, obvious increases in accuracy if Commerce

accepts the submission, Jindal's understandable misconception based on ambiguous wording of the questionnaire, and Jindal's quick move to remedy the missed deadline, Commerce's analysis overlooking these facts was an "unreasonable judgement in weighing relevant factors." *Bosun Tools*, 405 F. Supp. 3d at 1364-65 (*citing Star Fruits*, 393 F.3d 1281).

## II.    Commerce Unlawfully Concluded That Jindal Failed To Cooperate To The Best Of Its Ability Because It

As demonstrated above, Commerce unreasonably evaluated the extraordinary circumstances leading to Jindal missing the deadline for submitting the AQR and unreasonably denied Jindal's out-of-time request for extension of time to submit the AQR.  Commerce unreasonable analysis there also tainted its analysis of whether Jindal acted to the best of its ability.  Commerce based its decision whether Jindal acted to the best of its ability on the same erroneous and unreasonable analysis.  Accordingly, this Court should remand for Commerce to reconsider its decision whether Jindal's actions warranted AFA.

Commerce may only resort to AFA if it finds that Jindal "has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). "'Compliance with the 'best of its ability' standard is determined by assessing whether respondent has put forth its maximum efforts to provide Commerce with full and complete answers to all inquiries in an investigation.'" *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1360 (Fed. Cir. 2017) (*quoting Nippon*, 337 F.3d at 1382). "While the standard does not require perfection and recognizes that mistakes sometimes occur, it does not condone inattentiveness, carelessness, or inadequate record keeping." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333 (Fed. Cir. 2016) (*quoting Nippon*, 337 F.3d at 1382).  However, "{a} single late response is not determinative that a respondent has not acted to the 'best of its ability' to cooperate because "mistakes sometimes occur." *Cambria Co. LLC v. United States*, 705 F.

Supp. 3d 1369, 1375, 1380 (Ct. Int'l Trade 2024) (citing *Nippon Steel Corp.*, 337 F.3d at 1382). Further, "{n}ot every failure to comply with a filing deadline will result in authority to use an adverse inference against an interested party." *Celik Halat*, 557 F. Supp. 3d at 1375; *Hyundai Heavy Industries Co., Ltd. v. U.S.*, 393 F. Supp. 3d 1293, 1303 (Ct. Intl. Trade 2019) ("An adverse inference may not be drawn merely from a failure to respond.").

Jindal acted in its best ability under the circumstances to comply with Commerce's request for information. The circumstances that led to Jindal missing the deadline show that Jindal was putting forth maximum effort. Although Jindal was a mandatory respondent previously, a company does not retain the experience, rather, the experience is carried in its representatives and the institutional memory of its employees. As established above, neither was available to Jindal. Jindal had not been a mandatory respondent in the last reviews and had not contracted a representative. Jindal's delay in contracting a representative is not unreasonable given its **[ low import volume ]** and SRF's initial full engagement in the review. When all requests for review, except for Jindal, Jindal had the extraordinary circumstance of a severe illness leaving it unprepared to understand the deadlines.

Jindal was preparing its IQR for submission on the January 18, 2023 deadline, not realizing the requirement to file the AQR earlier. *See* PR33, *AQR EOT Request*, at 2 ("Respondent company *has been working diligently* to collect and review the required information for submission of Section III Identifying Affiliated Companies response" (emphasis added)). With a deficit of institutional understanding, Jindal was putting forth the required maximum effort. Commerce's failure to accurately assess the situation

### III.    Commerce Unlawfully Selected The Highest Program-Specific Rates Because It Did Not Conduct An Evaluation Of The Situation That Resulted In Applying AFA

Commerce unlawfully selected the highest program-specific rates because it did not conduct a proper evaluation of the situation that resulted in applying AFA. Commerce's evaluation was summary and resulted in Commerce using the highest rates possible under its hierarchy. A proper evaluation would have noted Jindal's efforts, the quick action it took when it finally understood the ambiguous wording in the questionnaire setting deadlines. Commerce did not weigh Jindal's efforts compared to other actions in other cases that were fully deserving of the highest rate. Accordingly, to the extent this Court affirms Commerce's application of AFA, this Court should remand this case for Commerce to select AFA rates commensurate with Jindal's efforts and intent to cooperate to the best of its ability.

The statutory language conditions the use of the highest rate on an evaluation of the circumstances:

> In carrying out paragraph (1), the administering authority may apply any of the countervailable subsidy rates or dumping margins specified under that paragraph, including the highest such rate or margin, based on the evaluation by the administering authority of the situation that resulted in the administering authority using an adverse inference in selecting among the facts otherwise available.

19 U.S.C. § 1677e(d)(2). *Hubbell Power Sys., Inc. v. United States*, 2019 WL 6174713 at *3 (Ct. Int'l Trade 2019) ("{A}lthough Commerce may resort to the highest rate on record, it must conduct a situation-specific analysis and explain that decision." (*citing POSCO v. United States*, 296 F. Supp. 3d 1320, 1349–50 (Ct. Int'l Trade 2018)). But Commerce must consider the totality of the circumstances and provide a full explanation why the the highest rate is appropriate. *Oman Fasteners*, 2023 WL 2233642 at *8 ("If Commerce fails to reasonably explain why its chosen rate was appropriate, the court must find it inappropriate." (*citing BMW of N. Am. LLC v. United States*, 926 F.3d 1291, 1301 (Fed. Cir. 2019); *BMW*, 926 F.3d at 1302 (Commerce's

selection of the 126.44 percent AFA rate was not proper because Commerce failed to consider

"the totality of the circumstances in selecting the AFA rate.").

Commerce's evaluation of the situation was woefully inadequate, thus Commerce's

selection of the highest available rate was punitive.  *See* PR92, *Jindal Case Br.*, at 6, 14-16.  In

the *Preliminary Determination*, Commerce's analysis was simply that Jindal failed to submit the

AQR timely, thus failed to act to the best of its ability, and there was nothing in Commerce's

opinion that would support lower than the highest rate:

> In this review, the record does not suggest that we should apply a
> rate other than the highest rate envisioned under the appropriate
> step of the hierarchy, pursuant to section 776(d)(1) of the Act for
> all programs included in the AFA rate for Jindal. As explained
> above, Jindal failed to respond to the affiliated companies' portion
> of the initial CVD questionnaire and, as such, it failed to cooperate
> to the best of its ability. Additionally, pursuant to section 776(d)(2)
> of the Act, we find that the record does not support the application
> of an alternative rate.

PR89, *Preliminary I&D Memo*, at 8.  In the *Final Results*, Commerce reiterated that "there is no

evidence that the rate for any subsidy program is based on aberrational data or is otherwise

unsupported."  PR108, *Final I&D Memo*, at 15.

Commerce failed to examine Jindal's actions and attempts to cooperate in light of actions

by interested parties in other cases.  Congress's conditioning the highest rates on the evaluation

of the situation requires that the highest rates be reserved for the most egregious behavior, such

as invoicing schemes or failing to disclose price-floor agreements.  *See Shandong Huarong*

*Mach. Co. v. United States*, 13 CIT 1815 (2007) (invoicing scheme); *Elkem Metals Co. v. United*

*States*, 27 CIT 838, 276 F. Supp. 2d 1296 (2003).

Here, Jindal was working on its response when it discovered it may have missed the AQR

deadline, and immediately sought an extension of time.  Jindal submitted the AQR and IQR

timely based upon its requests for extensions of time, although both were rejected by Commerce.

Jindal was not scheming or withholding information throughout the proceeding.  Commerce's

mere statement that "the record does not suggest that we should apply a rate other than the

highest review" utterly failed to engage with the facts of this case and consider them in light of

Commerce's deep experience with uncooperative parties.

Accordingly, Commerce did not properly evaluate the situation.  But Commerce also

failed to evaluate the situation in context of Jindal's efforts compared what has happened in other

cases

## IV.    The AFA Rate Assigned To Jindal Is Unlawfully Punitive

The overall rate, summing all the program-specific rates, is also unlawfully punitive.

Commerce is required to ensure that the AFA rate applied is not punitive.  Commerce failed to

do so here, choosing an aberrational program-specific margin, and applying a punitive 116.96%

margin to Jindal.  Thus, this Court should remand this case to remove of aberrational and

punitive margins.

Commerce assigning the AFA rate to Jindal was punitive in nature rather than a simple

deterrent.  The purpose of 19 U.S.C. § 1677e(b) is to provide respondents the incentive to

cooperate with Commerce, "not to impose punitive, aberrational, or uncorroborated margins."

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed.

Cir. 2000). Congress intended to implement 19 U.S.C. § 1677e(c) as a deterrent mechanism for

non-compliance and an AFA rate.  *Id.*  Congress could not have intended to give Commerce the

ability to assign an unreasonably high rate when this unreasonably high rate bears no relationship

to the respondent's actual rate. *Id. See Shanghai Tainai Bearing Co. v. United States*, 658 F.

Supp. 3d 1269, 1283 (Ct. Int'l Trade 2023) (holding that the AFA rate must be applied to arrive

at "a reasonably accurate estimate of the respondent's actual rate, albeit some built-in increase

intended as a deterrent to noncompliance") (quoting *Mueller Comercial de Mexico, S. de R.L. De*

*C.V. v. United States*, 753 F.3d 1227, 1234 (Fed. Cir. 2014)); *see also Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1378 (Fed. Cir. 2012) ("We find no support in our caselaw or statute's plain text for the proposition that deterrence, rather than fairness or accuracy, is the 'overriding purpose' of the antidumping statute when calculating a rate for a cooperating party").

Although Commerce is not required to corroborate the program-specific rates used here, or "demonstrate that the countervailable subsidy rate … reflects an alleged commercial reality of the interested party," 19 U.S.C § 1677e(d)(3)(B), Commerce must still ensure that the AFA rate is not punitive or aberrational.  Applying the 116. 96% AFA rate to Jindal, given its previous rate for nine administrative review, is excessively punitive and bears no relationship to Jindal's actual rate. Jindal has been selected as a respondent in nine administrative reviews. Jindal's previous rate was as follows:

| POR | Rate |
|---|---|
| **2021** | **116.96%** |
| 2020 | 3.52%[1] |
| 2019 | 5.39%[2] |
| 2018* | 11.67%[3] |
| 2017* | 10.51%[4] |
| 2016* | 11.26%[5] |
| 2015 | 5.26%[6] |

---

[1] *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2020*, 87 Fed. Reg. 76,024 (December 12, 2022);
[2] *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019*, 87 Fed. Reg. 5,464 (February 1, 2022).
[3] *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2018*, 86 Fed. Reg. 26,700 (May 17, 2021).
[4] *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2017*, 85 Fed. Reg. 14,463 (March 12, 2020).
[5] *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2016*, 84 Fed. Reg. 10,789 (March 22, 2019).
[6] *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2015*, 83 Fed. Reg. 5,612 (February 8, 2018).

| | |
|---|---|
| 2014 | 5.52%[7] |
| 2013 | 8.90%[8] |
| 2012 | 7.66%[9] |
| Average | 7.74% |

The 116.96% total AFA rate Commerce assigned to Jindal is more than 15 times Jindal's average rate of 7.74%. from the previous nine administrative reviews, making 116.96% total AFA rate aberrational and not reflective of Jindal's actual rate. Although what is reflective of Jindal's specific commercial reality may not be relevant, Jindal's rates have been reflective of the industry, and as such are relevant in examining whether Commerce's selected rate is unlawfully punitive. In the history of *PET Film from India*, no rates have been calculated above 12%. *See e.g.,* nn.1-9, supra. Thus,

---

[7] *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2014*, 81 Fed. Reg. 89,056 (December 9, 2016).
[8] *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2013*, 81 Fed. Reg. 7,753 (February 16, 2016).
[9] *See Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) From India: Final Results of Countervailing Duty Administrative Review; 2012*, 80 Fed. Reg. 11,163 (March 2, 2015).

## CONCLUSION & PRAYER FOR RELIEF

For the reasons stated above, this Court should remand this case to Commerce for further proceedings to accept Jindal's AQR and IQR and recalculate Jindal's margin in harmony with this Court's decision.

/s/ Irene H. Chen
Irene H. Chen
VCL Law LLP
1945 Old Gallows Road, Suite 260
Vienna, VA 22182
Tel: (301) 760-7393
Fax: (301) 263-7700
Email: ichen@vcllegal.com

/s/ Mark B. Lehnardt
Mark B. Lehnardt
Davis & Leiman
1012 Connecticut Ave., N.W., Ste. 1012
Washington, DC 20036
Tel: (202) 642-4850
Email: mlehnardt@dltrade.com

Date: September  6, 2024                    *Counsel to Plaintiff Jindal Poly Films Ltd.*

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that the foregoing Memorandum of Points and

Authorities in Support of the Motion for Judgment on the Agency Record dated September 6,

2024, complies with the word-count limitation 8,788 described in the June 3, 2024 Scheduling

Order.  The memorandum of law contains {xx} words according to the word-count function of

the word processing software used to prepare the memorandum. This brief has been prepared in a

proportionally spaced typeface using Microsoft Word in Times New Roman 12-point font.

Dated: September 6, 2024

/s/ Mark B. Lehnardt

Mark B. Lehnardt

*Counsel to Jindal Poly Films Limited*