Slip Op. 25-98

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| JINDAL POLY FILMS LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>DUPONT TEIJIN FILMS, ET AL.,<br><br>Defendant-Intervenors. | Before: Mark A. Barnett, Chief Judge<br>Court No. 24-00053 |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's final results in the countervailing duty administrative review of polyethylene terephthalate film, sheet, and strip from India for the 2021 period of review.]

Dated: August 1, 2025

Mark B. Lehnardt, Davis & Leiman PLLC, of Washington, DC, argued for Plaintiff Jindal Poly Films Limited. On the brief was Irene H. Chen, VCL Law LLP, of Vienna, VA.

Daniel Bertoni, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. On the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Franklin E. White, Jr., Assistant Director, and Brittney M. Welch, Trial Attorney. Of counsel on the brief was Hendricks Valenzuela, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Stephanie E. Hartmann, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC, argued for Defendant-Intervenors DuPont Teijin Films, SK Microworks America, Inc., and Mitsubishi Chemical America, Inc. - Polyester Film Division. On the brief were Jeffrey I. Kessler and Sydney J. Warren.

Court No. 24-00053 Page 2

Barnett, Chief Judge: This case arises out of the U.S. Department of Commerce's ("Commerce" or "the agency") final results in the 2021 administrative review of the countervailing duty ("CVD") order on polyethylene terephthalate film, sheet, and strip ("PET Film") from India. *See Polyethylene Terephthalate Film, Sheet, and Strip From India*, 89 Fed. Reg. 5,490 (Dep't Commerce Jan. 29, 2024) (final results of CVD admin. rev.; 2021) ("*Final Results*"), ECF No. 18-4,[1] and accompanying I&D Mem., C-533-825 (Jan. 23, 2024), ECF No. 18-5. Plaintiff, Jindal Poly Films Limited ("Jindal" or "Jindal Poly") seeks judgment on the agency record pursuant to U.S. Court of International Trade ("USCIT") Rule 56.2. [Corrected] Rule 56.2 Mot. of [Jindal Poly] for J. on the Agency R. ("Pl.'s Mem."), ECF No. 40. Defendant United States ("the Government") and Defendant-Intervenors DuPont Teijin Films, SK Microworks America, Inc., and Mitsubishi Chemical America, Inc. - Polyester Film Division ("Defendant-Intervenors") urge the court to sustain Commerce's *Final Results*. Def.'s Resp. to Pl.'s Mot. for J. on the Agency R. ("Def.'s Resp."), ECF No. 29; Def-Ints.' Resp. to Pl.'s Mot. for J. on the Agency R. ("Def.-Ints.' Resp."), ECF No. 30.

---

[1] The administrative record filed in connection with the *Final Results* is divided into a Public Administrative Record ("PR"), ECF No. 18-2, and a Confidential Administrative Record ("CR"), ECF No. 18-3. Parties submitted joint appendices containing record documents cited in their briefs. *See* Confid. J.A. ("CJA"), ECF No. 33; Public J.A. ("PJA"), ECF No. 34. The court references the confidential version of the relevant record documents, unless otherwise specified.

Court No. 24-00053                                                                                                    Page 3

This case requires the court to consider Commerce's denial of an untimely extension request early in the review and subsequent application of total adverse facts available. For the reasons that follow, the court remands the *Final Results*.

### BACKGROUND

**I. Initiation of the Administrative Review**

Commerce published the CVD order covering PET Film from India in July 2002. *Polyethylene Terephthalate Film, Sheet, and Strip (PET Film) from India*, 67 Fed. Reg. 44,179 (Dep't Commerce July 1, 2002) (notice of CVD order). On September 6, 2022, Commerce initiated an administrative review of the order for the 2021 period of review. *Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 87 Fed. Reg. 54,463, 54,473 (Dep't Commerce Sept. 6, 2022) ("*Initiation Notice*"). Commerce initiated the review in response to requests filed by several interested parties covering a total of eight Indian companies. *See* Reqs. for CVD Admin. Rev. (July 29, 2022), PR 3, CJA Tab 3 (filed by SRF Limited ("SRF")); Polyplex USA LLC's Req. for CVD Admin. Rev. (July 29, 2022), PR 4, CJA Tab 4; Req. for CVD Admin. Rev. (Aug. 1, 2022), PR 5, CJA Tab 5 (filed by Defendant-Intervenors, the petitioners in the underlying proceeding).

On October 27, 2022, Commerce selected SRF as the sole mandatory respondent for the review. Resp't Selection Mem. (Oct. 27, 2022) at 5, CR 3, PR 13, CJA Tab 8. Commerce issued a CVD questionnaire to the Government of India ("GOI") and to SRF, via the GOI. CVD Questionnaire (Nov. 3, 2022), PR 14, CJA Tab 9. SRF requested, and Commerce granted, a 10-day extension of time to file the affiliate portion

Court No. 24-00053                                                                                                    Page 4

of the questionnaire response.  Grant of Extension Req. for Resp. to Affiliation Portion of Sec. III of Initial Questionnaire (Nov. 15, 2022), PR 18, CJA Tab 13.

In early December 2022, the petitioners, Polyplex, and SRF timely withdrew their respective requests for review of all companies except Jindal.  *See* Decision Mem. for the Prelim. Results and Partial Rescission of the CVD Admin. Rev. (July 27, 2023) ("Prelim. Mem.") at 2, PR 89, CJA Tab 44.  Commerce then selected Jindal for individual examination.  *See id.*; *see also* Intent to Rescind Rev., in Part, and Co. Subject to Indiv. Examination (Dec. 9, 2022), PR 27, CJA Tab 19.

On December 12, 2022, Commerce issued the CVD questionnaire to the GOI and requested the GOI to forward the questionnaire to Jindal Poly.  CVD Questionnaire Cover Letter (Dec. 12, 2022), PR 28, CJA Tab 20.  Commerce listed the due date for the response to the affiliate portion of section III (referred to herein as the "Affiliate Questionnaire Response") as December 26, 2022, and the due date for the responses to section II and the remaining parts of section III of the questionnaire as January 18, 2022.  CVD Questionnaire (Dec. 12, 2022), PR 29, CJA Tab 21.  Commerce later acknowledged that because December 26, 2022, was a federal holiday, the Affiliate Questionnaire Response was actually due on December 27, 2022.  *See* Denial of Extension to File (Jan. 27, 2023) ("Commerce Ext. Denial") at 1 n.1, PR 42, CJA Tab 31.  Additionally, the latter date contained an error and should have read "January 18, 2023."  *See* Prelim. Mem. at 2 (noting the deadline).

Jindal Poly did not submit the Affiliate Questionnaire Response by the deadline.  Counsel for Jindal Poly entered its appearance on December 30, 2022.  Am. Entry of

Court No. 24-00053 Page 5

Appearance (Dec. 30, 2022) ("Jindal Appearance"), PR 30, PJA Tab 22; *see also* Alternate Auth. Cert. (Dec. 28, 2022), PR 32, CJA Tab 23 (appointing counsel as Jindal's representative). The next day, Jindal Poly requested an extension of time to January 10, 2023, to submit the Affiliate Questionnaire Response. Extension Req. to Submit [Affiliate Questionnaire Resp.] (Dec. 31, 2022), PR 33, CJA Tab 24.[2] The company explained that it was not reviewed "in calendar year[s]" 2019 and 2020 and previously "had no lawyer/representative for this case." *Id.* at 1. Jindal further pointed to a "communication gap" and a "medical leave" for a "severe illness" by the person responsible for addressing matters before the agency. *Id.* Jindal stated that other personnel had "inadvertently misconstrued" the deadline for all responses as January 18, 2023. *Id.* Jindal pointed to its prior cooperation with Commerce and commitment to cooperate in this review. *Id.* at 2. The petitioners argued that Jindal failed to demonstrate extraordinary circumstances for the extension and requested Commerce to reject the extension. Req. to Reject Jindal's Untimely and Retroactive Extension Req. (Jan. 5, 2023), PR 34, CJA Tab 25.

Before Commerce responded to Jindal's extension request, on January 7, 2023, Jindal attempted to file its Affiliate Questionnaire Response. *See* Req. to Reject Jindal's Untimely [Affiliate Questionnaire Resp.] (Jan. 9, 2023) at 1 n.1, PR 36, CJA Tab 27 (noting the submission). The petitioners requested Commerce to reject the document,

---

[2] Because December 31, 2022, fell on a Saturday, Commerce considered the submission to be filed on the next business day, i.e., January 3, 2023. Commerce Ext. Denial at 1 n.2.

*id.*, and Commerce did so, *see* Reject [Jindal's] Untimely Filed [Affiliate Questionnaire Resp.] (Feb. 15, 2023), PR 46, CJA Tab 32.

On January 11, 2023, Jindal requested an extension of time to February 17, 2023, to submit the remaining questionnaire responses. Extension Req. to Submit Resp. to Sec. III of Initial Questionnaire for Producers and/or Exps. of PET Film by [Jindal] (Jan. 11, 2023), PR 37, CJA Tab 28. On January 16, 2023, the GOI requested an extension for its response to section II of the CVD questionnaire. Gov't of India's First Req. for Extension to File Sec.-II CVD Investigation Initial Questionnaire Resp. (Jan. 16, 2023) ("GOI Ext. Req."), PR 38, CJA Tab 29. On January 17, 2023, Commerce suspended the deadlines for both Jindal Poly and the GOI. Suspension of Deadline to File Initial Questionnaire Resp. (Jan. 17, 2023), PR 39, CJA Tab 30.

Commerce subsequently denied Jindal Poly's request for an extension of time for the Affiliate Questionnaire Response, reasoning that the request failed to demonstrate extraordinary circumstances. Commerce Ext. Denial at 2. Commerce pointed to the apparent absence of "a medical emergency" and noted that Jindal had instead missed the deadline based on a mere misunderstanding. *Id.* Commerce noted that "Jindal's representative had in fact accessed the document multiple times before the deadline" and that "Jindal is an experienced respondent" in Commerce's administrative reviews. *Id.*

On February 16, 2023, Jindal Poly attempted to submit its section III response. Submission of Resp. to Sec. III of Initial CVD Questionnaire by [Jindal] (Feb. 16, 2023), CR 7–68, PR 47–65, CJA Tab 33. Commerce rejected the submission. Rejection of

Untimely Material (Mar. 9, 2023), PR 71, CJA Tab 36.  Also on February 16, 2023, the GOI, through its embassy in Washington, DC, and via email to the agency, requested Commerce to reconsider its denial of Jindal's untimely extension request and rejection of Jindal's submission.  *See* Placing Document on the R. (Feb. 21, 2023) ("Commerce Mem."), Attach. ("GOI Ltr."), PR 66, CJA Tab 34.  The GOI requested reconsideration on the basis of the responsible staff member's "serious medical illness leading to communication gaps within the company," the absence of prejudice to Commerce's ability to meet its statutory deadlines, the "miniscule" volume of Jindal's exports of subject merchandise, and Jindal's intent to "fully cooperate" in the proceeding.  GOI Ltr. at 1–2.  Commerce placed the letter on the administrative record, *see* Commerce Mem., but did not otherwise discuss it, *see, e.g.*, Prelim. Mem. at 2–3 (omitting the letter from Commerce's recounting of the documents filed in the underlying proceeding).

## II. The *Preliminary Results*

On March 28, 2023, Commerce extended the deadline for its preliminary results by 51 days from April 3, 2023, to May 23, 2023, citing as reasons the time needed "to collect, review and analyze questionnaire responses and issue supplemental questionnaires."  Extension of Deadline for Prelim. Results of CVD Admin. Rev.; 2021 (Mar. 28, 2023), PR 73, CJA Tab 38.  Commerce then reinstated the deadline for the GOI to respond to the CVD questionnaire.  Reinstatement of Deadline to File Initial Questionnaire Resp. for the Gov't of India (Mar. 28, 2023) ("GOI IQR Mem."), PR 74, CJA Tab 39.  The GOI timely filed its response.  Gov't of India's CVD Rev.-Initial Questionnaire Resp. (Apr. 11, 2023), CR 71–73, PR 75–77, CJA Tab 40.  Commerce

extended the deadline for the preliminary results by an additional 66 days to July 28, 2023. Second Extension of Deadline for Prelim. Results of CVD Admin. Rev.; 2021 (May 17, 2023), PR 78, CJA Tab 41. The GOI timely responded to a supplemental questionnaire. Gov't of India's CVD Investigation First Suppl. Questionnaire Resp. (June 26, 2023), CR 74, PR 86, CJA Tab 43.

On August 2, 2023, Commerce published the preliminary results of its review. *Polyethylene Terephthalate Film, Sheet, and Strip From India*, 88 Fed. Reg. 50,834 (Dep't Commerce Aug. 2, 2023) (prelim. results of CVD admin. rev. and partial rescission of admin. rev.; 2021) ("*Prelim. Results*"), PR 90, CJA Tab 45. Commerce preliminarily determined to use the adverse facts available ("AFA") to determine the subsidy rate for Jindal Poly. In addition to noting the missing information, Commerce concluded that it was appropriate to use AFA because Jindal's untimely extension request meant that the company "did not 'do the maximum it is able to do.'" Prelim. Mem. at 6 (quoting *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003)). Commerce "preliminarily selected, as AFA, the highest calculated non-*de minimis* rates for the same programs from any segment of this proceeding." *Id.* at 9. This method resulted in an *ad valorem* preliminary subsidy rate of 116.96 percent for Jindal Poly. *Prelim. Results*, 88 Fed. Reg. at 50,835.

### III. The *Final Results*

After submission of case and rebuttal briefs, Commerce extended the deadline for the *Final Results* by 56 days, from November 20, 2023, to January 25, 2024. Extension of Deadline for [*Final Results*] (Nov. 6, 2023), PR 103, CJA Tab 51.

Court No. 24-00053 {width=100%} Page 9

Commerce published the *Final Results* on January 29, 2024, a total of 180 days after the agency published the *Preliminary Results*. 89 Fed. Reg. at 5,490. Commerce continued to use AFA and made no changes to Jindal Poly's subsidy rate. I&D Mem. at 4; *Final Results*, 89 Fed. Reg. at 5,491.

By way of further explanation of the agency's determination to use AFA, Commerce noted that "Jindal took no steps to seek clarification of the deadlines" and "failed to monitor the questionnaire deadlines itself or appoint a representative with the authority to do so on its behalf until after the affiliated companies' questionnaire response was due." I&D Mem. at 7. Commerce faulted Jindal Poly for its untimely extension request and its attempt to submit untimely questionnaire responses. *Id.* at 7–8. Commerce rejected the argument that its use of AFA was arbitrary, in violation of 19 U.S.C. § 1677m(d), or resulted in a punitive subsidy rate. *Id.* at 11, 14–15.

This appeal followed. The court heard oral argument on July 2, 2025. Docket Entry, ECF No. 43; *see also* Oral Arg., https://www.cit.uscourts.gov/audio-recordings-select-public-court-proceedings.[3]

---

[3] Subsequent citations to the Oral Argument in this case are to time stamps from the recording.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018), and 28 U.S.C. § 1581(c) (2018).[4] The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

### DISCUSSION

Jindal challenges Commerce's denial of its untimely extension request, use of AFA, and selection of the AFA rate. Pl.'s Mem. at 5. The court remands on the first issue and, thus, does not reach Jindal's additional arguments.

Commerce's regulations require a respondent to demonstrate extraordinary circumstances for the agency to consider an untimely request for an extension of time. 19 C.F.R. § 351.302(c). Commerce defines an extraordinary circumstance as "an unexpected event that: (i) Could not have been prevented if reasonable measures had been taken, and (ii) Precludes a party or its representative from timely filing an extension request through all reasonable means." *Id.* § 351.302(c)(2). Examples include, but are not explicitly limited to, "a natural disaster, riot, war, force majeure, or medical emergency." *Extension of Time Limits*, 78 Fed. Reg. 57,790, 57,793 (Dep't Commerce Sept. 20, 2013) (final rule) ("*EOT Rule*"). "[I]nsufficient resources" or "inattentiveness" are unlikely to constitute extraordinary circumstances. *Id.* That being said, "a [timing] regulation which is not required by statute may, in appropriate

---

[4] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise specified.

Court No. 24-00053　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 11

circumstances, be waived and must be waived where failure to do so would amount to an abuse of discretion." *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207 (Fed. Cir. 1995). Commerce abuses its discretion and thus issues a decision not in accordance with law when its "decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors." *Consol. Bearings Co. v. United States*, 412 F.3d 1266, 1269 (Fed. Cir. 2005) (citation omitted).

　　　　Jindal challenges Commerce's finding of no extraordinary circumstances and Commerce's failure to weigh considerations of accuracy and finality in making that determination. *See* Pl.'s Mem. at 20–27. Jindal contends that Commerce abused its discretion when it denied Jindal's extension request and that such denial rested on both factual and legal errors. *Id.* at 19.

　　　　Defendant and Defendant-Intervenors support Commerce's finding of no extraordinary circumstances. Def.'s Resp. at 10–15; Def.-Ints.' Resp. at 7–9. The Government additionally argues that Jindal failed to administratively exhaust the argument that "Commerce 'ignored how much time was left in the review' when Commerce denied Jindal's extension request." Def.'s Resp. at 15 (quoting Pl.'s Mem. at 23). Defendant-Intervenors argue that Jindal failed to exhaust the argument that Commerce's deadlines were ambiguous. Def.-Ints.' Resp. at 8.[5]

---

[5] The Government further avers that Jindal seeks to rely on Commerce decisions to grant extension requests in other agency proceedings that are not on the record of this review. Def.'s Resp. at 13. Jindal counters that it was not required to place these

Court No. 24-00053                                                                                                    Page 12

"[T]he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  Here, however, Jindal did not need to further raise, at the *Final Results* stage, the argument that Commerce had ignored the amount of time remaining in the review when it ruled on Jindal's extension request many months prior.  The GOI's letter request for reconsideration relied in part on the absence of prejudice to Commerce's ability to timely complete the review.  GOI Ltr. at 2.  And while Commerce did not directly respond to the letter, Commerce cited the need to meet statutory and regulatory deadlines in support of its conclusion that Jindal impeded Commerce's proceeding.  *See* I&D Mem. at 6; Prelim. Mem. at 5.  Additionally, during oral argument, the Government acknowledged that Commerce is aware of its deadlines when it rules on an extension request.  Oral Arg. 10:00–11:20, 12:50–13:10.  While the agency's bare reference to the existence of its deadlines fails to

---

documents on the record in order to argue now that Commerce acted in an arbitrary and capricious manner and contrary to its practice when it denied Jindal's extension request despite making favorable determinations in "cases involving similar medical circumstances as well as minor mistakes of counsel."  Pl.'s Reply at 12.  At oral argument, Jindal averred, for the first time and without supporting authority, that the documents are judicially noticeable.  Oral Arg. at 27:40–27:50.  Setting aside the questions of record creation, administrative exhaustion, and judicial notice, it suffices to note that Jindal failed to develop arguments about any relevant agency practice in its moving brief and any such arguments are thus forfeited.  *Cf. Novosteel SA v. United States*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002).  Moreover, Jindal noted that Commerce has previously granted *timely* extension requests based on justifications allegedly similar to those Jindal offered but did not explain the relevance of those determinations to Jindal's untimely request.  Pl.'s Mem. at 21.  Jindal also cited to *one* example of a Commerce determination involving an untimely extension request based on a "medical emergency and subsequent death in the family," *id.* at 22, but went no further than noting the existence of the determination.

inform the court of the substance of Commerce's concerns, Jindal did not need to do more to preserve this argument for judicial review.[6]

Of course, this assumes the agency had concerns about the administrative burden that would result from considering Jindal's untimely submission, and therein lies the problem. Despite the bare reference to its deadlines, Commerce effectively treated its extraordinary-circumstances standard as fixed, regardless of the stage of the proceeding. In so doing, Commerce failed to account for all relevant considerations. For that reason, while this case presents a close question on Commerce's application of its extraordinary-circumstances standard, a remand is required for Commerce to remedy its erroneous exercise of discretion.

As set forth above, it is settled law that a non-statutory deadline may be waived and that Commerce's decision in that regard is subject to review for an abuse of discretion. *See, e.g.*, *NTN Bearing*, 74 F.3d at 1207. That is true whether Commerce is reviewing a timely extension request for good cause or an untimely extension request for extraordinary circumstances. In either scenario, the court considers whether Commerce made an "unreasonable judgment in weighing relevant factors." *Consol. Bearings*, 412 F.3d at 1269 (citation omitted). Among the relevant considerations are

---

[6] Defendant-Intervenors are, however, correct that in the underlying proceeding neither Jindal nor the GOI argued that the deadlines were "ambiguous." Jindal argues that Commerce had notice of Jindal's misunderstanding of the deadlines, Pl.'s Reply at 14, but Jindal's recognition of its own mistake does not infer that the agency should bear some responsibility for that mistake. *Cf.* [Jindal's] Case Br. (Aug. 28. 2023) at 9, CR 75, PR 92, CJA Tab 46 ("Jindal provided clear reasons for this misconstruction and it accepts that it is a mistake on its part . . . .").

Court No. 24-00053                                                                                                                         Page 14

"whether the interests of accuracy and fairness outweigh the burden placed on the [agency] and the interest in finality." *Grobest & I-Mei Indus. (Viet.) Co. v. United States*, 36 CIT 98, 123, 815 F. Supp. 2d 1342, 1365 (2012).[7]

      That Commerce requires an interested party to adduce facts within that party's control in support of an extension request does not mean that Commerce can ignore additional relevant considerations specific to the agency. *Cf. Cambria Co. LLC v. United States*, 48 CIT \_\_, \_\_, 705 F. Supp. 3d 1369, 1378 (2024) (considering *Commerce's* departure from the default deadline when assessing whether the agency's rejection of an untimely extension request and corresponding submission was reasonable). At the hearing in this case, the Government argued that Commerce decides extension requests with some of these considerations in mind, at least implicitly. Oral Arg. 10:00–11:20, 12:50–13:10. The court may not accept counsel's

---

[7] *Grobest* predates Commerce's promulgation in 2013 of the extraordinary circumstances provision of 19 C.F.R. § 351.302(c). *EOT Rule*, 78 Fed. Reg. at 57,790. There is no indication, however, that considerations of accuracy, finality, and administrative burden are displaced in light of the regulation, particularly insofar as *Grobest* cites binding appellate precedent for its articulation of the relevant considerations. 36 CIT at 122–23, 815 F. Supp. 2d at 1365 (citing *Chaparral Steel Co. v. United States*, 901 F.2d 1097, 1103–04 (Fed. Cir. 1990), for the remedial purpose of the statute; *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990), for the goal of accuracy; and *Timken U.S. Corp. v. United States*, 434 F.3d 1345, 1353 (Fed. Cir. 2006), for finality considerations). The court cited non-binding precedent to support its consideration of administrative burden, *id.* (citing *Usinor Sacilor v. United States*, 18 CIT 1155, 1164, 872 F. Supp. 1000, 1008 (1994)), but that is why the court considers "the need for finality at the final results stage," *id.* (quoting *Timken*, 434 F.3d at 1353), because that is when incorporating new information would be most burdensome.

unsupported *post hoc* rationalization; "Commerce must explain the basis for its decisions." *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1319–20 (Fed. Cir. 2009).[8]

In denying the extension request, Commerce discussed only the facts and circumstances proffered by Jindal. *See* Commerce Ext. Denial at 2.[9] Commerce neglected to consider adequately (either alone or in conjunction with the fact that Jindal's responsible employee was suffering from a serious medical condition): the early stage of the proceeding; Commerce's selection of Jindal for individual examination only after requests for review of *all* other subject companies, including the original mandatory respondent, SRF, were withdrawn; whether, at the time, accuracy considerations attendant to Commerce's review of a single mandatory respondent for the review period outweighed the burden on the agency; and that, when Commerce responded to the extension request some 28 calendar days after it was filed, Jindal had already filed its

---

[8] The Government also argued that Commerce's extraordinary-circumstances standard is akin to the court's occasional requirement for extraordinary circumstances to justify *additional* extension requests after several prior grants of extensions of time. Oral Arg. 12:20–12:45. The comparison is inapt for several reasons, but particularly when, as here, Jindal had no prior extension requests. Furthermore, the court uses a sliding scale approach when reviewing untimely extension requests, considering not only "excusable neglect or circumstances beyond the control of the party," USCIT Rule 6(b), but also the reason for and length of the delay, prejudice to other parties, impact on the judicial proceeding, and diligence of the movant, *see, e.g.*, *Aspects Furn. Int'l, Inc. v. United States*, 44 CIT __, __, 469 F. Supp. 3d 1359, 1364–65 (2020) (citations omitted).

[9] Commerce also stated that "Jindal's representative had in fact accessed the document multiple times before the deadline." Commerce Ext. Denial at 2. The Government thus infers that Jindal "waited" to file its extension request. Def.'s Resp. at 8, 10. But at the time, the person(s) accessing the document represented the GOI and not Jindal. *See* Jindal Appearance; Pl.'s Mem. at 22–23. Furthermore, Commerce had tasked the GOI with forwarding the questionnaire to Jindal. Whatever else transpired relevant to this issue is not part of the administrative record.

Court No. 24-00053 Page 16

Affiliate Questionnaire Response and done so three days prior to the requested extended deadline.[10]

While the court may not set aside proper procedure solely because "properly excluded evidence would yield a more accurate result if the evidence were considered," *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 761 (Fed. Cir. 2012), interests in accuracy may outweigh finality concerns early in Commerce's proceedings, *see, e.g.*, *Timken*, 434 F.3d at 1353. Here, Commerce provided no justification for why finality should have prevailed months before the preliminary results. There may be times when it is appropriate for Commerce to deny an untimely extension request that is filed early in a proceeding because, for example, the agency has already expended resources filling in the gaps created by the missed deadline. But that is not the case here. In this case, Commerce failed to consider all relevant information and thus abused its discretion by denying Jindal's extension request and rejecting the untimely submission. On remand, Commerce must consider Jindal's Affiliate Questionnaire Response and conduct any necessary further proceedings. Because Commerce's decision on this issue formed the sole basis for applying total AFA, that decision must also be remanded for reconsideration. The court declines to address the parties' arguments regarding the appropriateness of Commerce's AFA rate though the parties may renew those arguments on remand if they continue to be relevant.

---

[10] Not only did Commerce avail itself of several lengthy extensions of agency deadlines, but the agency's delay in resuming the review resulted in the GOI receiving almost three additional months to file its section II questionnaire response, without any apparent prejudice to Commerce meeting its deadlines. *See* GOI Ext. Req.; GOI IQR Mem.

Court No. 24-00053 Page 17

### CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's *Final Results* are remanded to the agency for further action consistent with this opinion; and it is further

**ORDERED** that the parties must consult and, no later than September 2, 2025, provide the court with a joint status report proposing a reasonable date by which the remand proceeding will be completed; it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule 56.2(h); and it is further

**ORDERED** that any comments or responsive comments must not exceed 5,000 words.

/s/    Mark A. Barnett  
Mark A. Barnett, Chief Judge

Dated: August 1, 2025  
      New York, New York